1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**T. JAMES TRUMAN & ASSOCIATES**
Tracy James Truman (State Bar No. 3620)
3654 North Rancho Drive, Suite 101
Las Vegas, Nevada 89130
Telephone:  (702) 256-0156
Facsimile:  (702) 396-3035
E-Mail:  tjamestruman@gmail.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*pro hac vice* pending)
Annick M. Persinger (*pro hac vice* pending)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
         apersinger@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NIKA RAET BEY, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MUSCLEPHARM CORPORATION,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

CLASS ACTION COMPLAINT

1
2
3
4
5

Plaintiff Nika Raet Bey, by and through her attorneys, brings this action on behalf of herself and all others similarly situated against Defendant MusclePharm Corporation.  Plaintiff makes the following allegations upon information and belief, except as to allegations specifically pertaining to herself, which are based on personal knowledge.

#### SUMMARY OF THE ACTION

6
7
8
9
10
11
12
13
14
15

1.        This is a class action on behalf of purchasers of FitMiss Fat-Burning supplements[1] that are purportedly designed for "all women who are striving to become a more fit and healthy FitMiss."  Defendant markets the products as a method of "Rapid Weight Loss – Visible Changes in Less Than 2 Weeks" as well as a way to "reduce[] body fat," to "boost" and "promote" metabolism, "to burn [] fat," and to "turn your body into a fat burning machine."  To bestow FitMiss fat burning products with an aura of legitimacy, Defendant also represents that the products contain "clinically tested ingredients."  Each of these representations is false and misleading.

16
17

2.        The products are not, in fact, effective for fat burning or weight control.  Indeed, as explained by the National Institutes of Health:  "There are no foods that can burn fat."[2]

18
19
20
21
22
23

3.        Plaintiff Bey asserts claims on behalf of herself and a nationwide class of purchasers of the FitMiss fat burning products for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, and for breach of express and implied warranties.  Plaintiff further asserts a claim on behalf of herself and a class Pennsylvania purchasers of the FitMiss fat burning products for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTCPL").

24
25
26
27
28

[1] Referred to herein as the "fat burning products," "Fat Loss products" or "products."
[2] *See National Institutes of Health*, "Information about Energy Balance" (*available at* http://science.education.nih.gov/supplements/nih4/energy/guide/info-energy-balance.htm)

CLASS ACTION COMPLAINT                                                          1

**THE PARTIES**

4.       Plaintiff Nika Raet Bey is a citizen of Pennsylvania, residing in Easton.  In or around May of 2013, Ms. Bey purchased FitMiss Burn at Vitamin World for $39.99 after reading the representations on the label, such as that the supplement would help her "burn the fat and lose weight" and cause "Rapid Weight Loss – Visible Changes In Less Than 2 Weeks."  The representations on the label were substantial factors influencing Ms. Bey's decision to purchase the purportedly fat burning product.  Even though Ms. Bey followed the directions on the label, she did not experience *any* weight loss or fat burning effects, and certainly did not experience "rapid weight loss" with "visible changes in less than 2 weeks."

5.       Defendant MusclePharm Corp. is a Nevada corporation with its principal place of business in Denver, Colorado.

**JURISDICTION AND VENUE**

6.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiff, as well as most members of the proposed class, are citizens of states different from the state of Defendant.

7.       This Court also has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question).  This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

8.       This Court has personal jurisdiction over Defendant because Defendant is incorporated in and has significant continuous and pervasive contacts with the State of Nevada.

9.       Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because Defendant transacts significant business within this District.

CLASS ACTION COMPLAINT

## FACTS COMMON TO ALL CAUSES OF ACTION

### A.     Background

10.     According to a Federal Trade Commission Staff Report,[3] the number of Americans who are overweight or obese have reached epidemic proportions; it afflicts six out of every ten Americans.  At the same time, nearly 29% of men and 44% of women are trying to lose weight (an estimated 68 million American adults).  Thus, the potential market for sellers of female targeted weight-loss products and services is huge.  Consumers spent an estimated $34.7 billion in 2000 on weight-loss products and programs.  The marketplace has responded with a proliferation of products and services, and many promise miraculous, quick-fix remedies.  Indeed, the FTC found that "[t]he use of false or misleading advertising claims in weight-loss advertising is rampant."

11.     Prior to 1994, weight-control products were regulated as drugs.  Unless they were either generally recognized as safe and effective or an approved new drug, over-the-counter ("OTC") products labeled for weight control were misbranded under Section 502 of the Food, Drug, and Cosmetic Act.  With some limited exceptions not pertinent here, an OTC product labeled for weight control required some form of pre-market review and approval by the Food and Drug Administration ("FDA") to determine safety and effectiveness.  "In 1994, the passage of the Dietary Supplement Health and Education Act of 1994 (DSHEA) dramatically changed the regulatory framework for weight-loss supplements, shifting FDA's role from premarket clearance to post-market enforcement and shifting the responsibility from government to industry to ensure products were safe and effective."  According to the FTC, "this change in regulatory structure has

---

[3] Richard L. Cleland, *et al.*, "Weight Loss Advertising: An Analysis of Current Trends, A Federal Trade Commission Staff Report," September 2002 (hereafter, "FTC Staff Report"), *available at* www.ftc.gov/reports/weight-loss-advertisingan-analysis-current-trends/.

CLASS ACTION COMPLAINT                                                                    3

1

2

coincided with a dramatic increase in the number of dietary supplement weight-loss products as

well as the amount of weight-loss product advertising."[4]

3

4

5

6

7

8

9

12.      America's epidemic of obesity finds consumers willing to try almost anything to

lose weight.  It is this desperate struggle with obesity that makes consumers so vulnerable to

Defendant's miracle weight-loss products.  Defendant is taking advantage of the 1994 regulatory

change to market its fat burning products to consumers who are unable to decipher and debunk the

junk science behind the products.  However, physicians, scientists, and dieticians agree – long

lasting weight loss comes through a healthy diet and exercise, not fad diets and magic pills.

10

11

**B.      The FitMiss Fat Burning Products**

13.      The FitMiss line of purportedly fat burning products that Defendant represents are

12

13

14

15

16

"Dosed + Formulated Specifically For Women," "fit your active lifestyle, and [] are specifically

designed [for all] women who are striving to become a more fit and healthy FitMiss" includes the

following "Fat Loss" component products: FitMiss Burn Women's 6 Stage Fat Burning System,

and FitMiss Tone Women's Mid-Section Fat Metabolizer.

17

18

19

20

21

22

23

24

25

26

27



28

<hr>

[4] *See* FTC Staff Report at 27-28.

14.     The pink themed product labels, shown below, are targeted at the 44% of women in America attempting to lose weight.  The labels feature the FitMiss logo of a slim woman, as well as an image of a toned bare stomach wrapped with a measuring tape to emphasize the fat loss that could be realized by consuming the products.

15.     Both Fat Loss products are uniformly labeled as containing "clinically tested ingredients" that provide an effective way to "burn fat" as follows:

a.   **FitMiss Burn Women's 6 Stage Fat Burning System**:  **Clinically Tested Ingredients ▪ Rapid Weight Loss – Visible Changes In Less Than 2 Weeks ▪** Appetite Suppressant & Mood Balancer ▪ **Boosts Metabolism** & Increases Energy; FOCUS. **BURN.** AMAZE.  **To burn the fat and lose weight**, you have to curb cravings and increase energy levels.  With FitMiss Burn and its revolutionary 6-stage approach, you can kick-start your metabolism while saying "NO" to pesky cravings, seeing **visible changes in less than 2 weeks**.  It's time to get fit and get sexy! (emphasis added).

b.   **FitMiss Tone Women's Clinically Proven CLA Weight Loss Blend: Clinically Tested Ingredients ▪ Reduces Body Fat ▪** Supports Body Shaping & Toning ▪ Promotes Healthy Metabolism; TRIM. SHAPE. GORGEOUS! FitMiss Tone is what you need to **turn your body into a fat-burning machine**!  The active ingredients in FitMiss Tome will help you **blast away fat and boost your metabolism**.  So while you are out there turning heads, remember FitMiss Tone helped you get there.  (emphasis added).

 

CLASS ACTION COMPLAINT                                                    5

1

**C.      The FitMiss Fat Burning Products Do Not Burn Fat or Cause Weight Loss**

2

16.      Contrary to Defendant's representations, there are no fat-burning miracles, and

3

Defendant's statements are absolutely false.  Any doctor knows that fat-burning miracles do not

4

exist and such statements are reckless and harmful to public health.  As stated by the National

5

Institutes of Health ("NIH"), "[t]here are no foods that can burn fat."[5]

6

7

17.      Because there are no foods that can burn fat, consuming caffeine, for example,

8

"does not constitute an effective strategy for weight loss."  Instead, the NIH explains, maintaining a

9

healthy body weight requires "balancing calories consumed with calories used for activities."   The

10

NIH also explicates that:

11

> Attention to energy balance *over time* is required for promoting health and maintaining a stable body weight.  For overweight people, steps must be taken to stop weight gain and reduce weight to a healthy level, and then to maintain that healthy weight.  Accomplishing these goals requires an understanding of energy balance – that is, of the general concept of energy in and energy out.  Individuals have direct control over both their food (calorie) intake and their physical activity level. …. People are generally surprised to learn just how small a contribution of sedentary activities, such as watching TV or playing video games, make to daily calorie expenditures.  On the other hand, any type of physical activity, from running or playing sports to walking or household work, increases the number of calories the body uses.

12
13
14
15
16

17

> As emphasized by the National Institute of Diabetes and Digestive and Kidney Disorders, the key to successful weight control and improved overall health is making physical activity a part of our daily routine.

18

19

> How much physical activity *is* necessary?  The Dietary Guidelines for Americans recommends 30 minutes a day for adults and 60 minutes a day for children and adolescents.  A new report from the National Academy of Sciences recommends a goal of one-hour-a-day total exercise for adults.[6]

20
21

22

Indeed, exercise and controlled food intake are the *only* means to promote weight loss.

23

That fact alone unambiguously shows that Defendant's representations about the Fat Loss

24

products are false.

25
26

[5] *See National Institutes of Health*, "Information about Energy Balance" (*available at* http://science.education.nih.gov/supplements/nih4/energy/guide/info-energy-balance.htm)

27

[6] *Id.* at 16.

28

CLASS ACTION COMPLAINT                                                              6

18.     Defendant's representation that the FitMiss Fat Loss products contain "clinically tested ingredients" is also false and misleading.  As the FTC has explained:

> The world of weight-loss advertising is a virtual fantasy land where pounds "melt away" while "you continue to eat your favorite foods"; "amazing pills … seek and destroy enemy fat" …
>
> And for those [consumers] who remain skeptical, there is an answer.  The products are backed by "clinical studies" or are "**clinically tested**" …
>
> Phrases like "the clinically proven healthy way to lose weight," "clinically tested," "scientifically proven," and "studies confirm" bestow products with an aura of scientific legitimacy and aim to persuade consumers that they should feel confident that the product will work.[7] (emphasis added).

19.     Defendant's claims that the products "cause rapid weight loss" and "blast away fat" are also false.  As the FDA warns, signs of fraudulent weight-loss dietary supplements include "promises of quick action, such as 'lose 10 pounds in one week.'"[8]

### 1.     The Ingredients in the Products Do Not Burn Fat

20.     In addition to the fact that weight loss can only be achieved by achieving energy balance – that is by controlling food intake and physical activity level – the purportedly active ingredients in the products have been shown to be ineffective for weight loss.

21.     Defendant represents on the FitMiss Burn product label and on its website that the purportedly "key ingredients" that provide a "Fat Metabolizer" effect and "All Day Energy-NO CRASH" are green tea extract and Caffeine.  But the FDA has determined that "there are inadequate data to establish the general recognition of the safety and effectiveness" of caffeine for the specified use of weight control.[9]  Likewise, a 2012 Cochrane Systematic Review of 13 randomized controlled trials, of at least 12 weeks duration, concluded that green tea preparations (catechins and caffeine) had no statistically significant effect on weight loss or the maintenance of

---

[7] Federal Trade Commission Staff Report, "Weight-Loss Advertising:  An Analysis of Current Trends" (Sept. 2002).

[8] http://www.fda.gov/forconsumers/consumerupdates/ucm246742.htm

[9] *See* 21 C.F.R. § 310.545(20).

CLASS ACTION COMPLAINT                                                            7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

weight loss.[10] As such, the systematic review demonstrates that Defendant's representations about FitMiss Burn are false and misleading because it *does not* cause "Rapid-Weight Loss – Visible Changes in Less Than 2 Weeks" or provide any fat loss or fat burning benefits.

22.    Defendant further represents on the FitMiss Burn product label and on its website that glucomannan (amorphophallus konjac) and raspberry ketones provide "weight management control" and "aid[] in the breakdown of fat molecules."[11]   But glucomannan is a soluble fiber that is not absorbed in the bloodstream, and does not cause any chemical response in the human body. As a result, gucomannan does not cause material loss of body fat in a person who does not reduce calories or increase exercise.  Further, despite Defendant's claim that the product contains "clinically tested ingredients" there has never been a human study on the purported weight loss effects of raspberry ketones (natural or synthetic).[12]   Indeed, "[e]xperts say that investing anywhere from $12 to $20 in a bottle of raspberry ketone supplements amounts to little more than wishful thinking.  And doing so may or may not be harmful."[13]

16
17
18
19
20

23.    Defendant falsely claims on the FitMiss Tone product label and on its website that its "CLA Fit Blend" is a "clinically proven" "Mid-section Fat Metabolizer."  Conjugated Linoleic

21
22
23
24
25
26
27
28

[10] Green tea for weight loss and weight maintenance (Dec. 12, 2012) (*abstract available at* http://www.ncbi.nlm.nih.gov/pubmed/23235664).

[11] Raspberry ketone has long been used as a chemical additive in perfumes and cosmetics due to its sweet fruity aroma.  Raspberry ketone is only found in trace amounts in raspberries (less than 0.1%), which likely makes the natural material from raspberries too costly for use in supplements.  As a result, raspberry ketone rarely comes from raspberries and is instead artificially synthesized.  Synthetic raspberry ketone is very cheap.  It only costs a couple of dollars per pound, which means that despite the high selling price, even a large bottle contains just pennies of raspberry ketone.  Clearly then, the real benefits from raspberry ketone are experienced by those who sell it and not those who use it.  *See* http://www.wordsonwellness.com/post/2012/06/13/With-All-Due-Respect-to-Dr-Oz-Raspberry-Ketone-is-not-a-Fat-Burning-Miracle.aspx

[12] http://www.wordsonwellness.com/post/2012/06/13/With-All-Due-Respect-to-Dr-Oz-Raspberry-Ketone-is-not-a-Fat-Burning-Miracle.aspx

[13] http://www.snopes.com/inboxer/scams/ultradrops.asp

CLASS ACTION COMPLAINT                                                    8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Acid ("CLA") does not reduce body fat mass or sagittal abdominal diameter[14] and does not cause weight loss.  In that connection, Zambell et al. (2000) found no statistical difference between the body compositions of participants in a CLA supplemented ground and a control group.  Zambell et al. tightly controlled energy intake and activity levels in a metabolic ward study.  The high level of control in the Zambell et al. study substantially increases the quality of their results.  Thus, 14 years ago, Zambell et al. showed that, contrary to Defendant's claims, CLA does no more than a placebo pill.[15]  Similarly, as stated by Wigham et al. (2007), "when the body of evidence is considered as a whole, CLA does not have a beneficial effect on human body composition."[16]  Likewise, Larsen et al. (2006) found that, after one year of CLA supplementation, CLA did not result in a difference in body weight or body fat.[17]  In an earlier study, Larsen et al. (2003) also concluded that:

> Although CLA appears to attenuate increase in bodyweight and body fat in several animal models, CLA isomers sold as dietary supplements are not effective as weight loss agents in humans and may actually have adverse effects on human health.[18]

24.      In short, the well-established energy balance equation (energy intake and energy output), and scientific research demonstrate that Defendant's claims about the efficacy of its products are false.

---

[14] Sagittal Abdominal Diameter is the distance from the small of the back to the upper abdomen and a measure of visceral obesity (the amount of fat in the gut region).

[15] Zambell, K. et al.: "Conjugated linoleic acid supplementation in humans:  effects on body composition and energy expenditure." *Lipids* 2000, 35: 777-782.

[16] Whigham, L. et al.: "Efficacy of conjugated linoleic acid for reducing fat mass: a meta-analysis in humans" *American Journal of Clinical Nutrition* 2007, 85: 1203-1211.

[17] Larsen T. et al.: "Conjugated linoleic acid supplementation for 1 year does not prevent weight or body fat regain" *American Journal of Clinical Nutrition* 2006, 83: 606-612.

[18] Larsen T. et al.: "Efficacy and safety of dietary supplements containing CLA for the treatment of obesity: evidence from animal and human studies" *Journal of Lipid Research* 2003, 44: 2234-2241.

CLASS ACTION COMPLAINT

9

1

**CLASS ACTION ALLEGATIONS**

2      25.     Plaintiff Bey seeks to represent a class defined as all persons in the United

3   States who purchased a FitMiss Fat Loss product (the "Class").

4
        26.     Plaintiff also seeks to represent a subclass of all persons who purchased a
5
    FitMiss Fat Loss product in Pennsylvania (the "SubClass").
6

7      27.     Excluded from the Classes are persons who made such purchase for purpose

8   of resale, as well governmental entities, Defendant, Defendant's affiliates, parents,

9   subsidiaries, employees, officers, directors, and co-conspirators.  Also excluded is any

10  judicial officer presiding over this matter and the members of their immediate families and

11  judicial staff.

12
        28.     The members of the Class are so numerous and geographically dispersed that
13
    joinder of all members is impracticable.  While the exact number of Class Members remains
14
15  unknown at this time, Plaintiff believes that there are hundreds of thousands of members of the

16  proposed Class.  Notice will be afforded using the best notice practicable under the circumstances,

17  such as by publication, and posting online.  Since the text of Fed. R. Civ. P. 23(c)(2)(B) only

18  requires individual notice to class members "who can be identified through reasonable effort,"

19  direct notice need only be provided where possible.
20
        29.     Common questions of law and fact exist as to all Class Members and predominate
21
22  over questions affecting only individual Class Members.  These common legal and factual

23  questions include, but are not limited to:

24      a.      Whether Defendant's marketing and advertising of the FitMiss Fat Loss products

25              includes false and misleading statements;

26
        b.      Whether Defendant's conduct violated the Magnuson-Moss Warranty Act;
27

28

---

CLASS ACTION COMPLAINT                                                            10

c.        Whether Defendant's conduct violated Pennsylvania's Unfair Trade Practices and

Consumer Protection Law; and

d.        Whether Defendant's conduct breached express or implied warranties.

30.        Plaintiff's claims are typical of the claims of all Class Members.  Plaintiff is situated

identically to all members of the Class with respect to the issues presented in this case.  The claims

of Plaintiff are based on the same fundamental factual allegations and legal theories as the claims

of all other members of the Class.

31.        Plaintiff will adequately represent and protect the interests of the Class and has no

interests that conflict with or are antagonistic to the interests of the Class.  She has also retained

counsel experienced in prosecuting class actions, and she intends to prosecute this action

vigorously.  The interests of Class Members will be fairly and adequately protected by Plaintiff and

her counsel.

32.        The class mechanism is superior to other available means for the fair and efficient

adjudication of the claims of Class Members.  Each individual Class Member may lack the

resources to undergo the burden and expense of individual prosecution of the complex and

extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases

the delay and expense to all parties and multiplies the burden on the judicial system presented by

the complex legal and factual issues of this case.  Individualized litigation also presents a potential

for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer

management difficulties and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment

of the liability issues will ensure that all claims and claimants are before this Court for consistent

adjudication of the liability issues.

CLASS ACTION COMPLAINT                                                                                          11

33.     Unless a class is certified, Defendant will retain monies received as a result of its

unlawful conduct that were taken from Plaintiff and proposed Class Members.

## FIRST CLAIM FOR RELIEF

### (Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*)

34.     Plaintiff incorporates by reference each and every allegation set forth above as

though fully set forth herein.

35.     The FitMiss Fat Loss products are consumer products within the meaning of the

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

36.     Plaintiff and the Class Members are "consumers" within the meaning of the

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

37.     Defendant is both a supplier and a warrantor within the meaning of the Magnuson-

Moss Warranty Act, 15 U.S.C. § 2301(4) and (5).

38.     Defendant's statements as set forth herein (including, *inter alia*, statements that the

FitMiss Fat Loss products contain "clinically tested ingredients," cause "rapid weight loss – visible

changes in less than 2 weeks," "reduce[] body fat," "burn [] fat,"  and "blast away fat") are "written

warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

39.     Defendant provides 90 capsules of FitMiss Burn per bottle and directs as follows:

"Take one serving (2 capsules) with an 8 oz. glass of water 30-45 minutes before breakfast, and/or

lunch.  Morning: Take two (1-2) capsules with 8 ounces of water 30-45 minutes before breakfast.

Afternoon: Take two (1-2) capsules with 8 ounces of water 30-45 minutes before lunch."

Similarly, Defendant provides 60 capsules of FitMiss Tone per bottle and directs users to

"consume 1 softgel with morning, noon, and evening meals …."  As such, Defendant warrants that

the products will cause fat and weight loss in "2 weeks" and in 20 days at the very latest.

CLASS ACTION COMPLAINT

12

40.      As alleged herein, Defendant has breached its written warranties by selling

consumers the FitMiss Fat Loss products, which have not been clinically tested and which do not

burn or reduce fat as warranted.

41.      As a foreseeable, direct and proximate result of Defendant's breach of its written

warranties, Plaintiff and each Class Member suffered damages.

## SECOND CLAIM FOR RELIEF

### (Breach of Express Warranty)

42.      Plaintiff incorporates by reference each and every allegation set forth above as

though fully set forth herein.

43.      Plaintiff, and each Class Member, formed a contract with Defendant at the time

Plaintiff and each Class Member purchased a FitMiss Fat Loss product.  The terms of the contract

include the promises and affirmations of fact relating to fat burning and loss on Defendant's

product packaging and online, as described above.  Defendant's affirmative representations

concerning weight and fat loss as described herein became part of the basis of the bargain and are

part of a contract between Plaintiff and the members of the Class on the one hand, and Defendant

on the other, and thus constituted express warranties.

44.      Defendant, as the designer, manufacturer, marketer, distributor and/or seller

expressly warranted, among other things, the following material terms about the FitMiss Fat Loss

products:

      a.   Clinically tested ingredients;

      b.   Clinically proven weight loss;

      c.   Rapid Weight Loss – Visible Changes in Less Than 2 Weeks;

      d.   Reduces body fat;

      e.   Blast[s] away fat;

CLASS ACTION COMPLAINT                                                                13

1
          f.   Burn the fat and lose the weight;

2
          g.   Turn your body into a fat-burning machine;

3
          h.   Boosts metabolism; and

4

5
          i.   Dosed + formulated for women.

6
45.     Defendant breached the terms of its contracts, including the express warranties, with

7
Plaintiff and the Class Members by failing to provide a product that provides the promised weight

8
and fat loss benefits.

9
46.     As a foreseeable, direct and proximate result of these breaches, Plaintiff and each

10
Class Member suffered damages.

11
### THIRD CLAIM FOR RELIEF

12
### (Breach of Implied Warranty of Merchantability)

13
47.     Plaintiff incorporates by reference each and every allegation set forth above as

14
though fully set forth herein.

15
48.     Defendant is and was at all times a "merchant" within the meaning of the Uniform

16
Commercial Code ("UCC").  Defendant manufactured, distributed and marketed the Fat Loss

17
products, which are "goods" within the meaning of the UCC.  Consequently, Defendant impliedly

18
warranted that the products were merchantable, including that they could pass without objection in

19
trade under the contract description, that they were fit for the ordinary purposes for which such

20
goods are used, that they were of fair average quality within the description, that they were

21
adequately labeled, and that they would conform to the promises or affirmations of fact made on

22
the container labels.  However, Defendant breached each of these implied warranties because

23
Defendant's Fat Loss products are not fit for the ordinary purpose for which weight loss

24
supplements are used – causing weight and fat loss.

25

26

27

28

CLASS ACTION COMPLAINT                        14

49.     Plaintiff and the Class Members purchased the products for the purpose of burning

fat and losing weight.

50.     The products were not altered by the Plaintiff or Class Members.  The products

were unmerchantable when they left the exclusive control of Defendant.  This unmerchantability is

inherent in the products.

51.     Plaintiff notified Defendant of the acts constituting breach of the implied warranties,

both for herself and the Class.

52.     As a foreseeable, direct and proximate result of these breaches, Plaintiff and each

Class Member suffered damages.

## FOURTH CLAIM FOR RELIEF

**(Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law "UTCPL"**

**73 Pa. Cons. Stat. §§ 201-2 *et seq.*)**

53.     Plaintiff incorporates by reference each and every allegation set forth above as

though fully set forth herein.

54.     Plaintiff brings this claim individually and on behalf of the members of the

proposed Pennsylvania Subclass against Defendant.

55.     Defendant's false advertising of FitMiss directly affected Plaintiff and other

consumers in Pennsylvania.

56.     Defendant's conduct, described herein, constitutes unfair methods of competition

and deceptive practices as described in 73 P.S. § 201-2(4)(ii), (v), (vii), (ix), and (xxi) because

Defendant made false and misleading statements about the products, and did not intend to sell them

as advertised.

57.     Defendant's practices also constitute unfair methods of competition as described in

73 P.S. § 201-2(4)(xiv) because the products do not perform as warranted.

CLASS ACTION COMPLAINT                                                          15

58.     The unfair methods of competition, and unfair deceptive practices employed by Defendant are unlawful under 73 P.S. § 201-3.

59.     As a direct and proximate result of Defendant's violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, Plaintiff and the Pennsylvania Subclass have suffered economic loss.

60.     Pursuant to 73 P.S. § 201-4.1, Plaintiff seeks an order of this Court permanently enjoining Defendant from continuing to engage in violations of the UTPCPL and for payment of costs and restitution.

61.     Pursuant to 73 P.S. § 201-9.2, Plaintiff is entitled to judgment in an amount up to three times the actual damages sustained, but not less than one hundred ($100.00), and is entitled to reimbursement for all reasonable attorney's fees and costs incurred.  Also, the Court may provide such additional relief as it deems necessary and proper, including punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment:

A.     Determining this action is a proper class action, and certifying Plaintiff as class representative;

B.     Awarding compensatory damages against Defendant in favor of Plaintiff and the Class for damages sustained as a result of Defendant's wrongdoing together with interest thereon;

C.     Awarding prejudgment interest;

D.     Awarding punitive damages as appropriate;

E.     Awarding extraordinary, equitable and/or injunctive relief as permitted by law (including but not limited to disgorgement);

CLASS ACTION COMPLAINT                                                                                16

1

2

F.      Awarding Plaintiff and the Class their costs and disbursements of this suit, including

reasonable attorneys' fees, accountants' fees, and experts' fees; and

3

4

G.     Awarding such other and further relief as may be just and proper.

### JURY DEMAND

5

6

Plaintiff demands a trial by a jury on all of the triable issues of this complaint.

7

8

Dated:  April 29, 2014                Respectfully submitted,

**T. JAMES TRUMAN & ASSOCIATES**

9

10

By:    */s/ Tracy James Truman*
           Tracy James Truman

11

12

Tracy James Truman (State Bar No. 3620)
3654 North Rancho Drive, Suite 101
Las Vegas, Nevada 89130
Telephone:  (702) 256-0156
Facsimile:  (702) 396-3035
E-Mail:  tjamestruman@gmail.com

13

14

15

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*pro hac vice* pending)
Annick M. Persinger (*pro hac vice* pending)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
        apersinger@bursor.com

16

17

18

19

*Attorneys for Plaintiff*

20

21

22

23

24

25

26

27

28

---

CLASS ACTION COMPLAINT                17