**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:14-cv-02881-CMA-MJW**

**NIKA RAET BEY**, on behalf of herself
and all others similarly situated,

      Plaintiff,

v.

**MUSCLEPHARM CORPORATION**,

      Defendant.

_____

**MOTION OF DEFENDANT MUSCLEPHARM CORPORATION**
**TO DISMISS COMPLAINT OF PLAINTIFF**
_____

Defendant MusclePharm Corporation ("MPC"), by and through its undersigned counsel of record, hereby presents its motion to pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint filed by plaintiff Nika Raet Bey ("Plaintiff"). This Motion to Dismiss is filed concurrently with MPC's Request for Judicial Notice and the Exhibits attached thereto, and the Declaration of Jordan R. Moon, Ph.D., presented with regard to the Request for Judicial Notice.

**I.     INTRODUCTION**

The Court should exercise its discretion to dismiss the complaint on the grounds of the primary jurisdiction of the Food and Drug Administration (the "FDA"). Upon so deciding, the Court need not address the other pleading deficiencies, including the fact that Plaintiff appears to be bringing this lawsuit not under her legal name but rather improperly under a pseudonym. Moreover, the first count alleging breach of the

Magnuson-Moss Warranty Act is barred as matter of law in light of the controlling regulations of the Food, Drug and Cosmetic Act (the "FDCA").  The second and third counts for breach of warranty and the fourth count under the Pennsylvania Unfair Trade Practices and Consumer Protection Law also are insufficiently pleaded to state a claim.

## II.   STANDARD OF REVIEW FOR MOTION TO DISMISS

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and finding the pleadings in that case to be insufficient, the U.S. Supreme Court states as follows:

> [T]he *tenet that a court must accept as true all of the allegations* contained in a complaint is *inapplicable to legal conclusions*. . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a *context-specific task that requires the reviewing court to draw on its judicial experience and common sense.* (Citation omitted.)  But *where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief.'* Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, at 678-679.  (emphasis added).

The facts must be sufficient to push the claims "across the line from conceivable to plausible." *Twombly*, at 557. The Court should not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Plaintiff's conclusions and allegations not based on the Actual FitMiss label and marketing statements are insufficient and should be disregarded.

As with other consumer "class action" complaints alleging claims that defy credibility regarding the understanding of the reasonable consuming public, the "survival

of the instant claim would require this Court to ignore all concepts of personal responsibility and common sense." *See Werbel v. PepsiCo, Inc.*, No. C 09–04456 SBA, 2010 WL 2673860 at *2 (N.D. Cal., July 2, 2010).

## III.   PLAINTIFF'S COMPLAINT ALLEGING FALSE LABELING OF THE FITMISS PRODUCTS MISCHARACTERIZES MPC'S ACTUAL STATEMENTS

The complaint is replete with generic references to claims about other dietary supplements, not applicable here, while mischaracterizing the actual FitMiss labels and marketing statements.  The allegations varying from the actual product labels should be disregarded. Plaintiff makes irrelevant assertions about "fat-burning miracles" (*see, e.g.*, Compl. ¶16), which are not based on MPC's labels and marketing.  The Court should review the actual product labels.

The complaint is not clear about which product she purchased.  Paragraph 4 of the complaint alleges that Plaintiff purchased FitMiss Burn – see the product label below and the enlarged image attached as <u>Exhibit 1</u> to the concurrently filed Request for Judicial Notice ("RJN").



Meanwhile, at paragraphs 13 and 15, the complaint also creates ambiguity by including a different product, FitMiss Tone – see the product label below and the enlarged image attached as RJN, Exhibit 2.



The only marketing statements that should be considered by the Court are those set forth on the product label.  (*See* RJN, Ex. 1).  It is patently not accurate that "here, Defendant promises its diet pills possess magical weight loss properties, such as the ability to 'burn fat' . . . ." (Compl., ¶ 16.)  Plaintiff's conclusory allegations are distortions and not actual quotes from the FitMiss label and should be disregarded as irrelevant to the motion to dismiss.

The FitMiss Burn label, states the following on a side panel:

BURN. FOCUS. AMAZE! To burn the fat and lose weight, you have to curb cravings and increase energy levels. With FitMiss Burn™ and its revolutionary 6-stage approach, you can kick-start your metabolism while

saying "NO" to pesky cravings, seeing visible changes in less than two weeks*. It's time to get fit and get sexy!

(RJN, Ex. 1)

Another panel on FitMiss Burn, states the following:

-RAPID WEIGHT LOSS—VISIBLE CHANGES IN LESS THAN TWO WEEKS*
-APPETITE SUPPRESSANT & MOOD BALANCER
-BOOSTS METABOLISM AND INCREASES ENERGY

(*Id.*)

On another portion of a side panel of FitMiss Burn is the statement "CLINICALLY TESTED INGREDIENTS." (*Id.*)

The complaint includes irrelevant surplusage; nowhere does the product label say that the product or ingredients themselves "burn fat." Nowhere does the product label state anything other than the fact that the "ingredients" have been "clinically tested." The active ingredients are indeed backed by substantial clinical data and shown to be effective in appetite suppression, energy enhancement and the promotion of rapid fat burning and weight loss. (RJN, Exs. 7-A—7-EE). The FDA is well aware of this fact, and thus many dozens of dietary supplement products having the same ingredients are sold in a highly competitive marketplace. (RJN, Exs. 8-A-G, J-K, M, P-T, V-W, Y-Z, BB-II, KK-PP).

In cases involving allegations of false advertising on a product label, "the primary evidence is the advertising itself," not whatever mischaracterizations the plaintiff pleads. Williams v. Gerber Products Co., 439 F. Supp. 2d 1112, 1115 (S.D. Cal. 2006); *see* Werbel v. PepsiCo, Inc., No. C 09–04456 SBA, 2010 WL 2673860 at *1 and n. 1 (N.D.

Cal., July 2, 2010) (product packaging image taken from defendant's Request for Judicial Notice).

## IV.   PLAINTIFF SHOULD BE REQUIRED TO FILE SUIT UNDER HER LEGAL NAME, WHICH APPEARS TO BE RAMONA R. JASPER

Fed. R. Civ. Proc, Rules 26(a) and 26(e)(1) require the disclosure of the true name of the party plaintiff (absent grounds to conceal her identity for her protection, not applicable here). *See Dotson v. Bravo*, 321 F.2d 663, 664-667 (7th Cir. 2003) (upholding district court's dismissal). Rule 10(a) of the Federal Rules of Civil Procedure also provides that "every pleading shall contain a caption setting forth the . . . title of the action" and "the title shall include the names of all the parties." The plaintiff's "failure to file under his true name is also a violation of Rule 10(a)." *Dotson,* at 667, n. 4.

The purpose of the Rules requiring the parties to sue under their own names is to "protect the public's legitimate interest in knowing which disputes involving which parties are before the federal courts that are supported with tax payments and that exist ultimately to serve the American Public." *See Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137, 139 (S.D. Id. 1996).

It appears from other public records that Plaintiff's legal name is Ramona Roda Jasper but that she purports to have changed it to Grand Raza Noblewoman "Sister Nika'Raet Qemamu El Bey," aka Living Soul, in accordance with a document named the "Free Moorish American Great Seal Zodiac Constitution." The Court is requested to take judicial notice of the complaint filed October 26, 2005 (Case No. 2:05-cv-05196-JAP-MCA; Dkt. 1) in the District of New Jersey, in which Plaintiff, there identifying herself as "Nika Raet Bey," sued North Carolina District Judge Jane V. Harper, the

6

State of North Carolina, and New Jersey State Court Judges Jo-Anne B. Spatola and Melvin S. Whitken.   (RJN, Ex. 3-A.); (*see also* RJN, Exs. 3-B, 3-C) (the "Affidavit of Facts That Led To This Action" also filed by Plaintiff on March 13, 2006, along with an "Emergency Petition for Injunctive Relief" (Case No. 2:06-cv-01180-KSH-PS; Dkts. 1 and 1-1) in the United States District Court, District of New Jersey).

This case has nothing to do with any purported need to conceal Plaintiff's true identity.  *See Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997) (discussing the role of Rule 10(a) and stating that it "instantiates the principle that judicial proceedings, civil as well as criminal, are to be conducted in public"); *Doe v. Rostker*, 89 F.R.D. 158, 160 (N.D. Cal. 1981) (denying, under Rule 10(a), the petition to sue under a false name stating: "Although the nature of the rule is one of form, the purpose behind such a rule is not solely one of administrative convenience. The rule serves to apprise the parties of their opponents, and it protects the public's legitimate interest in knowing all the facts and events surrounding court proceedings.").

MPC has not been able to ascertain whether there is a "Free Moorish American Great Seal Zodiac Constitution" recognized under the laws of the United States, and the Court is requested to take judicial notice of what purports to be the "Free Moorish American Great Seal Zodiac Constitution," which is available on line at various sites, including http://rvbeypublications.com/catalog/i39.html. (*See* RJN, Ex. 3-D.)   According to "Article 6" of the "Zodiac Constitution," the "Clock of Destiny" also constitutes a controlling document.  The Court is further requested to take judicial notice of the "Clock of Destiny," at http://clockofdestiny.com/.

Under none of these publications does it appear that Ramona Jasper has legally changed her name to "Nika Raet Bey" or any permutation thereof.  If that is the case, then there will be nothing preventing Ramona Jasper from using any other pseudonym in the future, thereby concealing her true identity as it may suit her, whether in litigation or in any other public dealings.  Plaintiff failed to file the complaint under her true name and has not petitioned this Court for use of a pseudonym.  Accordingly, the Motion to Dismiss should be granted, and Plaintiff may amend to identify herself.  If Plaintiff wishes to attempt to sue under a fictitious name, then she is required to petition the Court for that purpose, so that her true identity cannot be concealed in this litigation or from the public.  If she declines to do so, then the complaint should be dismissed with prejudice.

## V.   THE COURT SHOULD DISMISS THE COMPLAINT IN DEFERENCE TO THE PRIMARY JURISDICTION OF THE FOOD AND DRUG ADMINISTRATION

Plaintiff's claims regarding the content of the FitMiss product labeling fall squarely within the primary jurisdiction of the FDA. Courts regularly dismiss such claims in deference to the FDA's primary jurisdiction. The FDA regulates food, including dietary supplements, beverages and cosmetics with the primary jurisdiction to determine the content of product labels.

The primary jurisdiction doctrine promotes the proper utilization of administrative expertise to maintain uniformity in the treatment of matters under regulatory oversight by leaving decisions within the special competence of the regulatory agencies. *See Pharm. Research & Mfrs. Of Am. v. Walsh*, 538 U.S. 644, 672 (2003), (Breyer, J. concurring opinion); *Reiter v. Cooper*, 507 U.S. 258, 261-269 (1993); *S. Utah*

*Wilderness Alliance v. Bureau of Land Mgmt.*, 425 F.3d 735, 750-751 (10th Cir. 2005) (the doctrine serves two purposes: regulatory uniformity and resort to agency expertise); *Far E. Conference v. United States*, 342 U.S. 570, 574-575 (1952) (doctrine comes into play if it would serve one or more of the goals of uniformity, expert technical or policy decision making, and judicial efficiency).

By her complaint, Plaintiff wants the Court to regulate product labeling, even though Congress assigned that function to the FDA.  *See Healthpoint, Ltd. v. Stratus Pharm., Inc.*, 273 F. Supp. 2d 769, 787 (W.D. Tex. 2001) (false advertising "claims based on alleged mislabeling are, in essence, misbranding claims which should be decided by the FDA"). The FDA has promulgated extensive regulations that address how a manufacturer may label its products. *See, e.g.*, 21 C.F.R. §§ 101.1–101.108, and Subpart A, §§ 101.1–101.18.

The primary jurisdiction doctrine "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires resolution of issues which, under a regulatory scheme, have been placed within special competence of an administrative body, in which case the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64 (1956) (citing *General American Tank Car Corp. v. El Dorado Terminal Co.*, 308 U.S. 422, 433 (1940)).  In exercising its discretion to apply the doctrine, courts typically look to factors including whether adjudication of the issue calls for the administrative body's expertise and whether there is a desire for uniformity within the area of regulation.  *See Syntek Semiconductor Co., Ltd. v.*

*Microchip Technology, Inc.*, 307 F.3d 775, 781 (9th Cir. 2002) (citing *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)).

For the entire period that the FitMiss products have been on the market, the FDA has not taken action with regard to the content of the product label.  Moreover, there are numerous comparable products with similar product blends. The complaint asks the Court to intrude into the role of the FDA and creates the risk of inconsistent impacts on some products rather than others.

### A.     Plaintiff Improperly Seeks To Have This Court Take On The Role Of The FDA And Make Decisions Regarding Product Labeling

Courts defer to the FDA's primary jurisdiction regarding the "labeling" of a product, especially with complaints that do not claim damages for personal injury. The primary jurisdiction doctrine applies to consumer claims of false advertising. In the Tenth Circuit, the doctrine may be invoked where:

> issues of fact in the case (1) are not within the conventional expertise of judges; (2) require the exercise of administrative discretion; **or** (3) require uniformity and consistency in the regulation of the business entrusted to the particular agency.

*TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1238 (10th Cir. 2007) (emphasis added).

In *Watkins v. Vital Pharmaceuticals, Inc.*, No. CV 12–09374 SJO, 2013 WL 5972174 (C.D. Cal.), a case involving a purported consumer class action with allegations that the product label was misleading and constituted false advertising, the district court granted the motion to dismiss on the grounds of the FDA's primary jurisdiction, ruling as follows:

> [The primary jurisdiction of the FDA] 'is a doctrine used by the courts to allocate initial decisionmaking responsibility between agencies and courts where such jurisdictional overlaps and potential for conflicts exist.'.. . . .
>
> Congress has granted the FDA regulatory authority over false and misleading food labeling as part of the Food, Drug, and Cosmetic Act ("FDCA"). 21 U.S.C. § 343(a). The Ninth Circuit has recently offered district courts guidance on when it is appropriate to defer to the FDA's regulatory authority over the misleading labeling of food products. . . . .
>
> Although the precise issue before the court in *Pom Wonderful* was whether the FDCA barred the plaintiff's Lanham Act claim, courts have interpreted the decision as 'based on the idea of deference to the FDA' and 'implicitly relying on the primary jurisdiction doctrine.' Following the Ninth Circuit's deference to the FDA in *Pom Wonderful,* courts have found it inappropriate to "decide an issue committed to the FDA's expertise without a clear indication of how the FDA would view the issue.' (Citations omitted). A recurring example of such a situation is 'where the FDA has yet to speak on whether a particular label or claim on a consumer product is unlawful or misleading.' The primary jurisdiction doctrine is appropriate in this case because the FDA has yet to consider the nutritional import of the claim 'ZERO IMPACT' or in what context the claim might mislead consumers about a product's nutritional content.

*Id.* at **2-3 (emphasis added and citations omitted).

Although the Ninth Circuit determination in *Pom Wonderful* has been reversed by the United States Supreme Court in *Pom Wonderful LLC v. Coca-Cola Co.*, 134 S.Ct. 2228 (2014), the holding does not change the analysis and rationale which fully supports this Court's exercise of its discretion in this case to defer to the FDA's primary jurisdiction. Indeed, in the most recent ruling after the Supreme Court opinion in *Pom Wonderful*, the court in *Saubers v. Kashi Company*, Case No. 13CV899 JLS (BLM), 2014 WL 3908595 (S.D. Cal. Aug. 11, 2014), granted the motion to dismiss on FDA primary jurisdiction grounds and addressed the Supreme Court's *Pom Wonderful* decision, as follows:

Plaintiffs also argue that the U.S. Supreme Court's recent decision in *POM Wonderful LLC v. Coca–Cola Co.,* —— U.S. ——, ——, 134 S.Ct. 2228, 2231, 189 L.Ed.2d 141 (2014) holds that courts need not defer to the FDA's expertise in suits over deceptive or misleading food labeling. Plaintiffs' reliance on this case is inapposite, however, because ***POM Wonderful* makes no mention of the primary jurisdiction doctrine** and **stands principally for the proposition that Lanham Act unfair competition claims brought by a competitor are not *precluded* by the regulatory scheme of the federal Food, Drug, and Cosmetic Act**. 134 S.Ct. at 2241. Because dismissal on the basis of primary jurisdiction is without prejudice and does not necessarily preclude any claims brought by a plaintiff, *POM Wonderful'* s reasoning does not support Plaintiffs.

Accordingly, the Court finds that Plaintiffs' arguments are without merit and that the primary jurisdiction doctrine counsels dismissal without prejudice of all of Plaintiffs' claims at this time. In reaching this conclusion, the Court concurs with the majority of district courts within the Ninth Circuit that have considered this question. (Citations omitted.) The Court **GRANTS** Kashi's motion to dismiss on this basis.

*Id.* at *4 (emphasis added and in original).

Accordingly, the case authorities that dealt with the issue of the FDA's primary jurisdiction with reference to the Ninth Circuit opinion in *Pom Wonderful* continue to offer guidance with regard to the exercise of discretion to dismiss on primary jurisdiction grounds depending on the facts of the particular case.

In *Haggag v. Welch Foods, Inc.,* No. CV 13–00341–JGB (OPx), 2014 WL 1246299 (C.D. Cal.), the court dismissed claims of false advertising and improper labeling on primary jurisdiction grounds, ruling as follows:

As to the fourth factor set forth in *General Dynamics,* resolution of the issue presented to the Court requires expertise and uniformity in administration. 'Food labeling enforcement is a matter that Congress has indicated requires the FDA's expertise and uniformity in administration.' As Welch Foods points out, when the FDA acts, its actions affect an entire industry. However, if the Court decides whether the Heart Health Label here constitutes an implied health claim, it runs the risk of issuing a decision that is inconsistent with the FDA's regulatory scheme or later-issued guidance. . . .   Moreover, it would be inappropriate to decide the

12

issue, which is committed to the FDA's expertise, 'without a clear indication of how the FDA would view the issue.' Accordingly, the Court should defer to the FDA for resolution of the issue.

*Id.* at *6 (internal citations omitted).

The district court in *Astiana v. Hain Celestial Group, Inc.*, 905 F. Supp. 2d 1013 (N.D. Cal. 2012), also dismissed on primary jurisdiction grounds the complaint "premised on the argument that the defendants improperly used the word 'natural' on their cosmetics products' labels." *Id.* at 1014. "Plaintiffs acknowledge that the Food & Drug Administration ('FDA') has 'no policy, informal or otherwise, regarding the use of the term 'natural' on cosmetics." *Id.* Nevertheless, the district court exercised its discretion to defer to the FDA's primary jurisdiction, stating as follows:

> In fact, the *Pom* court expressly stated that it was 'primarily guided' in its decision by 'Congress's decision to entrust matters of juice beverage labeling to the FDA and by the FDA's comprehensive regulation of that labeling.' *Pom* at 1178. The court then made clear that, because it 'lack[ed] the FDA's expertise in guarding against deception' in the food labeling context, 'the appropriate forum for Pom's complaints is the FDA.' *Id.* at 1178. . . . Thus, it appears that the *Pom* court was implicitly relying on the primary jurisdiction doctrine, which allows the court, 'under appropriate circumstances, [to] determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts.

*Id.* at 1015.

Thus, the *Astiana* court decided that "[i]n the absence of any FDA rules and regulations (or even informal policy statements) regarding the use of the word 'natural' on cosmetics labels, the court declines to make any independent determination of whether defendants' use of 'natural' was false or misleading." *Id.* at 1016; *see also Deary v. Vital Pharmaceuticals, Inc.*, 12-cv-04314 RGK (MAN), in which the plaintiff

pleaded unfair business practice and false advertising counts regarding a dietary supplement, also with allegations that that the marketing and labeling were deceptive. (*See* RJN, <u>Ex. 4</u>.) The district court in *Deary* granted VPX's motion to dismiss on primary jurisdiction grounds and entered its November 14, 2012 order, ruling as follows:

> The Court finds Plaintiff's allegations to fall outside the traditional expertise of judges and requires the expertise of an administrative authority, in this case the FDA. *Plaintiff's allegations involve . . . contents of labels* for dietary supplements, and product safety. *These types of issues are best resolved through the expertise of the FDA pursuant to the Primary Jurisdiction Doctrine.*

(*Id.*) (emphasis added).

Food, which includes dietary supplements, beverages and drugs are regulated by the FDA under the Federal Food, Drug, and Cosmetic Act ("FDCA").  21 U.S.C. §§ 301 et seq.  Section 701(a) of the FDCA states as follows: "The authority to promulgate regulations for the efficient enforcement of the Act, except as otherwise provide in this section, is hereby vested in the Secretary [of Health and Human Services]."  Under this authority, the FDA issues regulations to interpret and enforce the requirements of the FDCA.

In addition to Congress providing that the FDA has primary jurisdiction to interpret and enforce the FDCA, the FDA's own regulations confirm its primary jurisdiction:  "The FDA has primary jurisdiction to make the initial determination on issues within its statutory mandate . . . ."  21 C.F.R. § 10.25(b).  The FDA can either commence administrative enforcement or bring judicial actions through the Department of Justice. 21 U.S.C. 337 and 342(f); 21 C.F.R. § 10.25.  Centralization of enforcement power provides for administrative "flexibility" that is a "critical component of the statutory

and regulatory framework under which the FDA pursues difficult (and often competing) objectives." *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 349 (2001).

As set forth in paragraph 11 of the complaint, Plaintiff acknowledges the jurisdiction of the FDA with regard to dietary supplements under the Dietary Supplement Health and Education Act of 1994 ("DSHEA").  The Court should take judicial notice of DSHEA, (RJN, Ex. 5-A), as well as the FDA records available to the public on the FDA website including informational documents regarding the functions of FDA's Center for Food Safety and Applied Nutrition and its Division of Dietary Supplements.  (*See* RJN, Exs. 5-B, 5-C); FDCA Section 403, codified as 21 U.S.C. § 343 (RJN, Exhibit 5-D).

Furthermore, in addition to the FDCA and FDA Regulations, dietary supplements also are subject to DSHEA. The regulatory framework under DSHEA, which also governs the FDA in the exercise of its primary jurisdiction, is described as follows:

> In 1994, DSHEA created a unique regulatory framework for dietary supplements in the United States. Its purpose was to strike the right balance between providing consumers access to dietary supplements that they use to help maintain and improve their health and giving the Food and Drug Administration (FDA or the Agency) the necessary regulatory authority to take action against supplements that present safety problems, have false or misleading claims, or are otherwise adulterated or misbranded.

(RJN, Ex. 5-E) (http://www.fda.gov/NewsEvents/Testimony/ucm115163.htm).

With regard to dietary supplements, the FDA's Center for Food Safety and Applied Nutrition is responsible for enforcement. Courts recognize that the interpretation and enforcement of the FDCA and its application to dietary supplements involve "complex chemical and pharmacological considerations, and determination of technical

and scientific questions," (citation omitted) and "requires agency expertise."  *See*

*Dietary Supplement Coalition, Inc. v. Sullivan*, 978 F.2d 560, 563 (9th Cir. 1992).

Moreover, the FDA itself declares its recognition that it has primary jurisdiction

over the content of the labeling of dietary supplements:  "Under the Act, <u>FDA has</u>

<u>exclusive jurisdiction over the safety, and primary jurisdiction over the labeling, of</u>

<u>dietary supplements</u>."  (RJN <u>Ex. 5-F</u>) (<u>Guidance for Industry</u>: Substantiation for Dietary

Supplement Claims Made Under Section 403(r)(6) of the Federal Food, Drug, and

Cosmetic Act, page 2) (emphasis added).

Furthermore, if the FDA believes that a dietary supplement is mislabeled due to

the lack of scientific substantiation for its marketing claims, then it takes action under its

primary jurisdiction.  For example, see the Warning Letter, (RJN, <u>Exhibit 6-A</u>), issued by

the FDA with regard to products named "fatblast X-TREME" and "Extreme Fat Burner,"

declaring as follows:

> We have reviewed these claims and have concluded that they are not
> supported by reliable scientific evidence. Because these claims lack
> substantiation, they are false and misleading, and cause your products to
> be misbranded under sections 403(a)(1) and 403(r)(6)(B) of the Act [21
> U.S.C. 343(a)(1), (r)(6)(B)]. It is a violation of section 301(a) of the Act [21
> U.S.C. 331(a)], to introduce or deliver for introduction into interstate
> commerce any food, including a dietary supplement, that is misbranded.

(RJN, <u>Ex. 6-A</u>).

Additional examples of FDA Warning Letters regarding dietary supplements

marketed as fat burners for weight loss that the FDA determined lacked substantiation

are presented with the Request for Judicial Notice as <u>Exhibits 6-B through 6-F</u>.

If the FDA has not initiated action with regard to any particular dietary supplement, consumers may submit complaints to the FDA about its regulated products and may petition the FDA to issue or amend a regulation or to take other administrative action regarding a regulated product. *See* 21 C.F.R. § 10.30. The FDA must rule on all citizen petitions received that comply with FDA Regulations. *See id.* at § 10.30(e). An interested person may request reconsideration of the FDA's ruling on a petition. *See id.* at § 10.33(b). In addition, an interested person may seek judicial review of the FDA's final action under the Administrative Procedures Act. *See* 5 U.S.C. §§ 500 et seq.; 21 C.F.R. § 10.45.

The primary jurisdiction doctrine applies when "protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987) (quoting *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 353 (1963)). "Primary jurisdiction, like exhaustion, allows complex questions to be answered in a uniform manner by one decision maker, the agency, rather than many different courts." 33 Wright & Koch, *Federal Practice and Procedure*: Judicial Review § 8399 (2006).

The FDCA prohibits the introduction into interstate commerce of any product that is misbranded. *See* 21 U.S.C. § 331(a). The FDCA deems a food or beverage "misbranded" if, among other things, its labeling is "false or misleading in any particular." 21 U.S.C. § 343(a). Among other things, the FDCA sets forth specific requirements regarding the labeling of food and beverages. *See* 21 U.S.C. § 343(f).

To implement the FDCA, the contents of the label for a product such as "FitMiss" fall squarely within the jurisdiction of the FDA. *See* 21 C.F.R. § 111, Title 21 – Food and Drugs: Chapter I. Food and Drug Administration, Department of Health and Human Services; Subchapter B. Food for Human Consumption.

If claims for breach of warranty or the Pennsylvania Unfair Trade Practices and Consumer Protection Law could allow the relief Plaintiff seeks in this action, then product manufacturers could be subject to different labeling requirements in each of the states. Judges applying the state laws of each of the 50 states all could require different features for label content, with no coordination or uniformity as now exists under the FDA's primary jurisdiction. Allowing separate lawsuits about whether a the FitMiss product sold with its packaging labels should be deemed "mislabeled" under the FDCA and the FDA Regulations would run the risk of inconsistent results in various courts as well as a result applicable to one manufacturer that is inconsistent with the eventual determination by the FDA under its primary jurisdiction.

Plaintiff seeks to have the Court resolve issues that are squarely within the FDA's expertise, which stems from the focused analysis of risks and years of experience addressing how to implement labeling requirements in light of the multitude of factors. "The doctrine of primary jurisdiction 'is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decision-making responsibility should be performed by the relevant agency rather than the courts.' 'The doctrine is applicable whenever the enforcement of a claim subject to a specific regulatory scheme requires resolution of issues that are within the special competence

of an administrative body.'"   *Davel Communs., Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2006) (internal citations omitted).

**B.     The FDA Has Not Taken Action With Regard To MPC's FitMiss Because There Is Scientific Substantiation For The Efficacy Of The Products, Their Ingredients, And The Marketing Claims**

By the complaint, Plaintiff wants the Court to take on the role of the FDA and evaluate the scientific literature which is supportive of the FitMiss products, their ingredients and MPC's marketing claims.

Among the representative scientific articles substantiating the efficacy of FitMiss Burn and Tone, their ingredients, and the marketing statements, are research studies presented with the concurrently filed Request for Judicial Notice.  FDA scientists can be expected to be well aware of this literature and its import, which confirms the benefits of dietary supplements such as FitMiss Burn and Tone.  The Court is requested to take judicial notice of the examples of scientific literature regularly reviewed by FDA scientists, which substantiate efficacy of the FitMiss product ingredients and the marketing statements.  (RJN, Exs. 7-A through 7-OO).

Plaintiff's complaint mischaracterizes and misapplies research articles that Plaintiff claims differ from the overwhelming body of scientific literature that supports the efficacy of dietary supplements like FitMiss. It therefore is understandable why the FDA has taken no action to interfere with MPC's marketing and sale of FitMiss products.

Although of course Plaintiff must claim that the product "didn't work" for her in order to have any standing, as a matter of law the Plaintiff's personal idiosyncratic response to the FitMiss product is not relevant to its efficacy. All marketing statements

regarding the efficacy of a product necessarily pertain to the results applicable to the average consumer, including any attributes specifically identified.  *See Tambrands, Inc. v. Warner-Lambert Co.*, 673 F. Supp. 1190, 1193-1194 (S.D.N.Y. 1987); *Morris v. Group W, Inc.*, 66 F.3d 255, 257-8 (9th Cir. 1995); *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 2:09–mc–50356, 2009 WL 1543451 at *2 (E.D. Mich. June 2, 2009).

A review of third-party websites, such as www.bodybuilding.com, shows broad support and customer satisfaction among the consumers who use FitMiss products. *See* reviews.bodybuilding.com/FitMiss/Burn; reviews.bodybuilding.com/FitMiss/Tone.

Moreover, the Court's taking over the role of the FDA for just a single product carries the risk of inconsistent determinations by one court in one state regarding one product while there is no similar regulation of all of the many other manufacturers of similar products in the marketplace.  (*See* RJN, Exs. 8-A through 8-PP) (various such dietary supplements).

## C.   The Complaint Should Be Dismissed On Primary Jurisdiction Grounds

Since Plaintiff's claims invade the primary jurisdiction of the FDA, the question becomes what this Court should do with the complaint. Courts have either dismissed such claims or stayed the litigation pending resolution by the regulatory agency.

> Where an issue falls within an agency's primary jurisdiction, the district court enables 'referral' of the issue to the agency . . . . In practice, it means that a court either stays proceedings, or dismisses the case without prejudice, so that the parties may pursue their administrative remedies.

*Id.* at 1087.

"There is <u>no formal transfer mechanism</u> between the courts and the agency; rather, upon invocation of the primary jurisdiction doctrine, <u>the parties are responsible for initiating the appropriate proceedings before the agency</u>."  *Syntek Semiconductor Co. v. Microchip Tech Inc.*, 307 F.3d 779, 782, n. 3 (9th Cir. 2002), (emphasis added).

The district court in *Watkins v. Vital Pharmaceuticals, Inc.*, in dismissing the complaint on the grounds of the FDA's primary jurisdiction, ruled as stated as follows:

> Once invoked, the primary doctrine requires a court to suspend proceedings in order to 'give parties [a] reasonable opportunity to seek an administrative ruling.'  If a court determines that the doctrine of primary jurisdiction applies, it must either stay the case pending administrative ruling or dismiss the case without prejudice.  The decision to either stay or dismiss the case is within a court's discretion, but it must ensure that no party will be 'unfairly disadvantaged' by dismissal.  The primary factor in determining whether a plaintiff will be unfairly disadvantaged is whether his claims are likely to become time-barred as a result of dismissal.

*Id.* at *4 (internal citations omitted).

In the present case, Plaintiff alleges to have purchased the product in May 2013. Thus, there is no statute of limitations remotely putting the claims at being at risk of being time-barred.  See *Id.* at *5. If Plaintiff is actually interested in protecting the public as the complaint claims, then Plaintiff has years to pursue her assertions before the FDA.  There is no reason to stay the instant action, and the Court should grant MPC's Motion to Dismiss on the grounds of the FDA's primary jurisdiction.

## VI.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE MAGNUSON-MOSS WARRANTY ACT

Plaintiff's first count purports to be claim for breach of warranty under the Magnuson-Moss Warranty Act (the "MMWA").  No valid claim can be stated for breach of warranty under the MMWA based on the labels of dietary supplements, which are

regulated by the FDA.   Courts regularly dismiss purported claims breach of warranty claims attempted to be brought under the MMWA with regard to the labels of and marketing statements for dietary supplements. In dismissing *with prejudice* such a count under the MMWA, the district court in *Bates v. General Nutrition Centers, Inc.*, 897 F. Supp. 2d 1000 (C.D. Cal. 2012), ruled as follows:

> Plaintiff brings one claim under the Magnuson-Moss Warranty Act, alleging that Defendants breached their written warranties by stating that Defendants' C-4 Extreme dietary supplement contains DMAA and claimed it as a component of geranium. (CAC ¶¶ 102-103.) Defendants argue in their Motion that the Magnuson-Moss Warranty Act claim is inapplicable here. (Mot. 22.)
>
> The Magnuson-Moss Warranty Act applies to written warranties on consumer products. 15 U.S.C. §§ 2301-2312. But the Magnuson-Moss Warranty Act is limited, because it is 'inapplicable to any written warranty the making or content of which is otherwise governed by Federal law.' 15 U.S.C. § 2311(d).
>
> Defendants are correct that the Magnuson-Moss Warranty Act claim should be dismissed because the Food, Drug, and Cosmetic Act governs written warranties on the labeling of dietary supplements. (Mot. 22.) Other courts have followed the same language from the Magnuson-Moss Warranty Act and dismissed such claims relating to the labeling of products that the Food, Drug, and Cosmetic Act regulates. (Citations omitted).
>
> This case deals with the labeling of Defendants' C-4 Extreme dietary supplement. It matters not whether C-4 Extreme should be classified as a food, dietary supplement, or drug — the Food, Drug, and Cosmetic Act labeling regulations apply for all three classifications. 21 U.S.C. § 343. Thus, Plaintiff cannot state a claim for under the Magnuson-Moss Warranty Act. Accordingly, Defendants' Motion as to this claim is GRANTED.

*Id.* at 1002 (emphasis added).

Thus, in light of the federal regulation of dietary supplement product labels under the FDCA, as to "Plaintiff's Magnuson-Moss Warranty Act claim — this claim is DISMISSED WITH PREJUDICE." *Id.* at 1004.

VII.   **PLAINTIFF'S SECOND AND THIRD COUNTS FOR BREACH OF WARRANTY FAIL TO STATE A CLAIM**

Plaintiff's second count for "breach of express warranty" and third count for "breach of implied warranty of merchantability" fail to state a valid claim.

Plaintiff's alleged claims for breach of warranty should be determined under Pennsylvania state law.  *See Elvig v. Nintendo of Am., Inc.,* 696 F. Supp. 2d 1207, 1210 (D. Colo 2010) (citing *Boone v. MVM, Inc.,* 572 F.3d 809, 811-812 (10th Cir. 2009) and *Richard O'Brien Co. v. Challenge-Cook Bros., Inc.*, 672 F. Supp. 466, 467-468 (D. Colo. 1987)).

The pleading of paragraph 4 of the complaint begs the question of what Plaintiff actually relied upon, if anything.  The complaint alleges that Plaintiff made her purchase "after reading representations on the label."  The complaint then goes on to identify some statements on the label, but does not state that Plaintiff read those.  Then the complaint proceeds to allege that Plaintiff's decision to purchase was influenced by "the representations."  Especially in light of the suspicious circumstances regarding how Plaintiff came to buy the FitMiss product once, so soon after it came onto the market, and then without making any claim for a refund, "found" counsel in Walnut Creek, California, to bring a purported class action.

Although this case should be dismissed in deference to the FDA's primary jurisdiction, as a matter of law the complaint as pleaded is insufficient to allege reliance on a particular marketing statement so as to state a claim for breach of express or implied warranty.  *See Boyd v. Johnson & Johnson*, No. 2:09–mc–50356, 2002 WL 372939 at *3 (Pa.Comm.Pl., Jan. 22, 2002) (buyer must be induced to make purchase

because of particular statement); *Bukoskey v. Palombo*, No. 11342-2007, 2007 WL 4922803 at *471  (Pa.Comm.Pl., Nov. 20, 2007) (no sufficient pleading of guarantee to plaintiff's satisfaction); *Starks v. Coloplast Corporation*, Civil Action No. 13–3872, 2014 WL 617130 at **6-7 (E.D. Penn., Feb. 18, 2014) ("failure to support his conclusory statements regarding breach of an express warranty with any factual allegations does not meet the pleading standard set forth in *Twombly*").

Moreover, any single individual's level of weight loss is immaterial, including Plaintiff's.  If she had purchased aspirin sold for headache relief, and afterward she still had a headache, there could be no breach of warranty claim.  There is no "money back guarantee" based on the unique physiology of any individual consumer.  The test is whether the product is effective for the average consumer, which Plaintiff fails to plead. *Tambrands, Inc. v. Warner-Lambert Co.*, 673 F. Supp. 1190, 1193-1194 (S.D.N.Y. 1987); *Morris v. Group W, Inc.*, 66 F.3d 255, 257-8 (9th Cir. 1995); *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 2:09–mc–50356, 2009 WL 1543451 *2 (E.D. Mich. June 2, 2009).

Thus, without a specific allegation that FitMiss is defective and its ingredients do not perform for the average consumer – a claim that was not made and cannot be pleaded in good faith in light of the substantial scientific support – there also can be no claim for breach of implied warranty of merchantability. *See Solarz v. DaimlerChrysler Corporation*, No. 2033 APRILTERM 2001, CONTROL 112087, 2002 WL 452218 at *5 (Pa.Comm.Pl., Mar. 13, 2002).

**VIII.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**

Plaintiff's fourth count under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") also fails to state a claim, for the same reasons as Plaintiff's failure to plead breach of express warranty.  *See Boyd,* 2002 WL 372939 at *4  (UTPCPL claim fails for similar reasons to failure of breach of express warranty claim); *Bukoskey*, 2007 WL 4922803 at *472  (UTPCPL claim fails on same grounds of failure of express and implied warranty claim).

**IX.   CONCLUSION**

Plaintiff's claims of false labeling on dietary supplement product labels are at the core of the FDA's primary jurisdiction. Especially where the product is safe and the plaintiff is uninjured, the Court should exercise its discretion to dismiss in recognition of and deference to the FDA.  For each of these reasons, MPC respectfully requests that the Court grant its motion to dismiss Plaintiff's complaint.

Dated:  November 24, 2014

Respectfully submitted,

BALLARD SPAHR LLP

By:  /s/ K. Allison White
K. Allison White #37136
1225 17th Street, Suite 2300
Denver, CO 80202-5596
Phone Number: (303) 292-2400
Fax Number:  (303) 296-3956
whiteka@ballardspahr.com

**ATTORNEYS FOR DEFENDANT
MUSCLEPHARM CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of November, 2014, a true and correct copy of the foregoing **MOTION OF DEFENDANT MUSCLEPHARM CORPORATION TO DISMISS COMPLAINT OF PLAINTIFF** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Annick Marie Persinger
Bursor & Fisher, P.A.
1990 North California Boulevard
Suite 940
Walnut Creek, CA 94596
925-300-4455
Fax: 925-407-2700
Email: apersinger@bursor.com

*Attorney for Plaintiff*

By:  s/ *K. Allison White*
        K. Allison White