**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-02881-CMA-MJW

NIKA RAET BEY, on behalf of herself and all others similarly situated,

        Plaintiff,

   v.

MUSCLEPHARM CORPORATION,

        Defendant.

---

**PLAINTIFF NIKA RAET BEY'S
REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFF'S RESPONSE IN
OPPOSITION TO DEFENDANT MUSCLEPHARM CORPORATION'S MOTION TO
DISMISS COMPLAINT**

---

      Pursuant to Fed. R. Evid. 201, Plaintiff requests that this Court take judicial notice of each of the following exhibits:

      A true and correct copy of the label of FitMiss Burn, attached hereto as **Exhibit 1**. The Court may take judicial notice of matters incorporated by reference into the Complaint. *See e.g.*, *Noble Asset Management v. Allos Therapeutics, Inc.*, 2005 WL 4161977, at *2 (D. Colo. Oct. 20, 2005) (stating that courts may take judicial notice of matters referred to in a plaintiff's complaint) (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

      A true and correct copy of the label of FitMiss Tone, attached hereto as **Exhibit 2**. The Court may take judicial notice of matters incorporated by reference into the complaint. *See e.g.*, *Noble Asset Management*, 2005 WL 4161977, at *2.

A true and correct copy of the California Superior Court's order in *Londora Thomas v. Vital Pharmaceaticals, Inc.*, No. BC440964 (Cal. Super. Ct. 2010), attached hereto as **Exhibit 3**. The Court may take judicial notice of another court's order, and matters of public record.  *See e.g.*, *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006) (noting that the court may take judicial notice of its own files and records, as well as matters of public record).

A true and correct copy of the court authorized notice in a class action lawsuit regarding the Sensa Weight Loss System, attached hereto as **Exhibit 4**.  The Court may take judicial notice of another court's order, and matters of public record.  *See e.g.*, *Tal*, 453 F.3d at 1264 n. 24.

A true and correct copy of the April 2, 2012 Consolidated Class Action Complaint in the *In Re Sensa Weight Loss System Litigation*, attached hereto as **Exhibit 5**.  The Court may take judicial notice of court filings and matters of public record.  *See e.g.*, *Tal*, 453 F.3d at 1264 n. 24.


Dated:  December 15, 2014

**BURSOR & FISHER, P.A.**


By:  *s/ Annick M. Persinger*
　　　　Annick M. Persinger

Annick M. Persinger
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: apersinger@bursor.com

*Attorneys for Plaintiff*

**EXHIBIT 1**





# BURN

## WOMEN'S 6 STAGE FAT BURNING SYSTEM

- RAPID WEIGHT LOSS—VISIBLE CHANGES IN LESS THAN 2 WEEKS
- APPETITE SUPPRESSANT & MOOD BALANCER
- BOOSTS METABOLISM & INCREASES ENERGY

STRONG IS THE NEW S



## FOCUS, BURN, AMAZE!

To burn the fat and lose weight, you have to curb cravings and increase energy levels. With FitMiss Burn™ and its revolutionary 6-stage approach, you can kick-start your metabolism while saying "NO" to pesky cravings, seeing visible changes in less than 2 weeks*. It's time to get fit and get sexy!

STRONG IS THE NEW SEXY!



ENZYME AID

ase Blend (Jull), Lipase, Lactase,
ase, Invertase, Bromelain,
/Alpha-Galactosidase), Almond
der, Corn (Zea mays) (Silk), Kelp
Apple (Malus domesticus) Pectin

based on a 2000 calorie diet.

DIURETIC COMPLEX
dion (Taraxacum officinale)(Root)
on (Taraxacum)(Leaf)(Contains Arbutin,
Root, Echinacea augustifolia Root

Magnesium Stearate, Microcrystalline
FD&C Red #3, FD&C Red #40, FD&C

dosages and may cause choking,
lty in swallowing or breathing after
ns over 18 years of age.
any product containing caffeine or
ou are taking any prescription or over
gnant or are nursing.
a MAO inhibitor.

CLINICALLY TESTED INGREDIENTS



FITmiss

DIETARY

90 CAPSULES

B URB

**EXHIBIT 2**

# TRIM.
# SHAPE.
# GORGEOUS!

FitMiss Tone™ is what you need to turn your body into a fat-burning machine! The active ingredients in FitMiss Tone™ will help you blast away fat and boost your metabolism. So while you are out there turning heads, remember FitMiss Tone™ helped you get there.




POWERED BY:

**Exclusively Developed & Manufactured For:**
MusclePharm® Corp.
4721 Ironton St. Bldg. A
Denver, CO 80239 USA
Made in a cGMP certified facility
Packaged in **USA**

## FITMISS.COM

*Directions :* As a dietary supplement, consume 1 softgel with morning, noon, and evening meals or use as directed by a physician or licensed nutritionist.

## SUPPLEMENT FACTS
Serving Size: 1 softgel
Servings Per Container: 60

| Amount Per Serving | | % Daily Values |
|---|---|---|
| Calories | 9 | * |
| Total Fat | 1g | 2% |
| CLA Fit Blend™ | 1000 mg | † |
| (Conjugated Linoleic Acids, Extra Virgin Olive Oil, Avocado Oil) | | |

* Percent Daily Values are based on a 2000 calorie diet.
† Daily Value (DV) not established.

**ALLERGEN WARNING:** This product was produced in a facility that may also process ingredients containing milk, egg, soybeans, shellfish, fish, tree nuts, and peanuts.

**WARNING:** Do not exceed the recommended serving suggestion. Not for use by individuals under the age of 18. Do not use if you are pregnant, expect to become pregnant or are nursing. Consult your physician prior to using this product if you are taking any prescription or over-the-counter medication or if you have heart disease, thyroid disease, diabetes, high blood pressure or any other medical condition.
**KEEP OUT OF REACH OF CHILDREN.**

▼ These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.

CLINICALLY TESTED INGREDIENTS



# TONE™

DIETARY SUPPLEMENT
**60 CAPSULES**

WOMEN'S \*STIMULANT FREE\* MID-SECTION FAT METABOLIZER

✦ REDUCES BODY FAT\*
✦ SUPPORT BODY SHAPING & TONING\*
✦ PROMOTES HEALTHY METABOLISM\*



STRONG IS THE NEW SEXY!®

**EXHIBIT 3**

# FILED

LOS ANGELES SUPERIOR COURT

~~TENTATIVE~~ RULING

NOV 3 0 2010

JOHN A. CLARKE, CLERK

BY A. BAHTON, DEPUTY

| | |
|---|---|
| **HEARING DATE:** | **November 30, 2010** |
| **CASE:** | **Londora Thomas v. Vital Pharmaceuticals, Inc.** |
| **CASE NO.:** | **BC440964** |
| **Opposed:** | **Yes** |

TRIAL: None set

---

### DEMURRERS (x2) AND MOTIONS TO STRIKE (x2) RE: CLASS ACTION COMPLAINT

---

**MOVING PARTY:**      (1) D – Vital Pharmaceuticals, Inc.; (2) D – John H. Owoc

**RESPONDING PARTY(S):** P – Londora Thomas

**PROOF OF SERVICE:**
- Correct Address: OK
- 16/21 (CCP § 1005(b)): Ok.  Served by mail on September 10, 2010.

**CASE HISTORY:**
- 07/01/10:

**STATEMENT OF FACTS**

    Class action alleging misbranding of its Meltdown® dietary supplement as "all-natural" when in fact it contains a pharmaceutical prescription drug called Oxilofrine.

    Defendants Vital Pharmaceuticals, Inc. and John H. Owoc demurrer to the Complaint and move to strike portions thereof.

- SUSTAIN demurrer with leave to amend as to the first, second, third, fourth and sixth causes of action and without leave as to the seventh cause of action
- OVERRULE demurrer as to the fifth cause of action.
- DENY motion to strike in its entirety.

1

## ANALYSIS

I.   Defendant Vital Pharmaceuticals, Inc. ("VPX")

Request For Judicial Notice

Defendants request that the Court take judicial notice of certain unspecified documents and/or facts. This request is DENIED in its entirety. Defendants do not specify if they request judicial notice of the document attached, the facts stated therein, or both. In any event, the documents attached are not subject to judicial notice under Evidence Code § 452 as they appear to be evidence of facts reasonably subject to dispute and are not properly authenticated. In this regard, Plaintiff's objections to Defendant's Request for Judicial Notice are SUSTAINED.

As such, Defendant's arguments based on whether methylsnephrine is a drug that should not properly be included in dietary supplements (see VPX's demurrer at Page 5:15-8:26) is not considered in ruling on this demurrer.

### Demurrer

A general demurrer only tests the legal sufficiency of the complaint. It only challenges defects that appear within the four corners of a complaint, or from matters outside the pleading that are properly judicially noticeable. Blank v. Kirwan (1985) 39 Cal. 3d 311, 318. No other extrinsic evidence can be considered. Ion Equipment Corp. v. Nelson (1980) 110 Cal. App. 3d 868, 881. In ruling on a demurrer, the court must accept as true all material facts properly pleaded, no matter how improbable. Serrano v. Priest (1971) 5 Cal. 3d 584, 591; Stewart v. City of Pismo Beach (1995) 35 Cal. App. 4th 1600, 1604; Del E. Webb Corp. v. Structural Materials Co. (1981) 123 Cal. App. 3d 593, 604-05. A civil complaint will withstand a demurrer if it states a cause of action on any theory. Johnson v. Clark (1936) 7 Cal. 2d 529, 536; Quelimane Co., Inc. v. Stewart Title Guaranty Co. (1998) 19 Cal. 4th 26, 28.

1.   First Cause of Action – Violation of Business and Professions Code §§ 17200 et seq. (Violations of Health & Safety Code)

   A.   Standing

There is a surprising dearth of case law on the issue of whether the purchase of a product by itself is an injury in fact and loss of money or property sufficient to confer standing under B & P Code § 17200.

"Injury in fact" and "Loss of money or property"

Buckland v. Threshold Enterprises, Ltd. (2007) 155 Cal.App.4th 798, 813-14, cited by Defendant, is distinguishable from the case at hand. In Buckland, the plaintiff admitted she had purchased the product solely to establish standing under B & P § 17200:

Here, Buckland purchased the product to establish standing for litigation against Threshold. Although she indicated she also bought it to investigate claims against Threshold, she has not identified any investigation expenses other than the cost of the product. Because the costs were incurred solely to facilitate her litigation, her purchase does not constitute the requisite injury in fact; to hold otherwise would gut the injury in fact requirement.

Buckland v. Threshold Enterprises, Ltd. (2007) 155 Cal. App. 4th 798, 815-16.

The Buckland court expressly stated the issue as "whether a plaintiff who buys a product to pursue litigation establishes standing under the UCL." Id. at 817.

Defendant also cites Laster v. T-Mobile United States, Inc. (S.D. Cal. 2005) 407 F.Supp. 2d 1181, 1194, which did not hold that the purchase price of a product is insufficient as a matter of law to establish standing under B & P Code §§ 17200 or 17500.

Plaintiffs, in essence, contend putative class members were injured by Defendants' "bait-and-switch" practices; that is, consumers were lured in with advertisements for free or deeply discounted phones, yet once in the store, they were charged sales tax based on the full retail value of the phone. (FAC PP 26 & 31.) Plaintiffs further contend that if Defendants were faithful to their advertisements, they would have absorbed the tax. Instead, according to Plaintiffs, Defendants illicitly shifted the tax burden to their customers ("fleeced" them) once such customers had taken the time and effort to respond to the deceptive advertisements. (Id.) **Such allegations sufficiently allege an injury in fact**.

Laster, supra, 407 F.Supp.2d at 1194 (bold emphasis added).

The Laster court, however, did find that there was a lack of causation because there was no allegation Plaintiffs had actually relied on false or misleading advertisements. Id.

As to loss of money or property, Buckland is distinguishable because the court therein found there was no loss of money or property where the product was purchased solely to establish standing:

Here, Buckland's declaration establishes that she did not buy Threshold's product due to "mistake, coercion or request" (citation omitted), but to establish standing for an action in the public interest. . . . The voters have thus effectively determined that it is not "desirable to encourage" individuals to incur expenses for UCL actions in the public interest, within the meaning of the principles stated in the Restatement of Restitution. (Citation omitted). Accordingly, Buckland's purchase of Threshold's product cannot reasonably be viewed as "lost" money or property under the standing requirement (Citation omitted).

Buckland, supra, 155 Cal.App.4th at 818.

Indeed, dicta from <u>Hall v. Time Inc.</u> (2008) 158 Cal.App.4th 847—a case most closely on point to the instant action—suggests what might suffice as an alleged injury in fact:

> In this case, Hall did not allege he suffered an injury in fact under any of these definitions. He expended money by paying Time $ 29.51—but he received a book in exchange. **He did not allege he did not want the book, the book was unsatisfactory, or the book was worth less than what he paid for it.**

<u>Id</u>. at 855 (bold emphasis added).

Here, Plaintiff does not allege that she did not get what she paid for when she purchased Defendants' product in reliance on Defendants' advertisement. Plaintiff alleges that Defendants' advertisement made false statements about its ingredients, effectiveness and side effects. However, Plaintiff does not allege that the product failed to burn fat as represented or that she suffered any adverse side effects *as a result* of the ingredients contained in the product which *she believed were not in the product.* At ¶ 19, Plaintiff admits that "[s]he suffered ascertainable loss – the purchase price of Meltdown – based upon Defendants' false and misleading statements."

Accordingly, the demurrer to all B & P §§ 17200-based claims are SUSTAINED with leave to amend.

B.    Re: Request for Injunctive Relief Invades FDA's, FTC's and California Department of Health's Primary Jurisdiction.

Given the ruling on standing, this argument need not be considered at this time. But see below at 5.a.

2.    Second Cause of Action – Violation of Business and Professions Code §§ 17200 et seq. (Unfair Competition Act)

A.    Standing

The demurrer to all B & P §§ 17200-based claims are SUSTAINED with leave to amend.

See above at 1.A.

B.    Re: Request for Injunctive Relief Invades FDA's, FTC's and California Department of Health's Primary Jurisdiction.

Given the ruling on standing, this argument need not be considered at this time. But see below at 5.a.

3.    Third Cause of Action – Violation of Business and Professions Code §§ 17200 et seq. (Unfair Competition Act)

A.    Standing

The demurrer to all B & P §§ 17200-based claims are SUSTAINED with leave to amend.

<u>See</u> above at 1.A.

     B.     <u>Re: Request for Injunctive Relief Invades FDA's, FTC's and California Department of Health's Primary Jurisdiction.</u>

Given the ruling on standing, this argument need not be considered at this time. But see below at 5.a.

4.     <u>Fourth Cause of Action – Violation of Business and Professions Code §§ 17500 et seq. (False Advertising)</u>

     A.     <u>Standing</u>

The demurrer to the B & P § 17500 claims is SUSTAINED with leave to amend.

<u>See</u> above at 1.A. Proposition 64 made the same changes to the standing requirement under B & P § 17500 as it did to § 17200. <u>Harper v. 24 Hour Fitness, Inc.</u> (2008) 167 Cal.App.4th 966, 975 ("Proposition 64 made identical changes to the requirements for standing and representative actions under section 17500, the false advertising law.")

     B.     <u>Re: Request for Injunctive Relief Invades FDA's, FTC's and California Department of Health's Primary Jurisdiction.</u>

Given the ruling on standing, this argument need not be considered at this time. But see below at 5.a.

5.     <u>Fifth Cause of Action – Violation of Civil Code §§ 1750 et seq. (Consumer Legal Remedies Act)</u>

     A.     <u>Re: Request for Injunctive Relief Invades FDA's, FTC's and California Department of Health's Primary Jurisdiction.</u>

The request for injunctive relief in connection with the CLRA cause of action does not seek to intrude upon the government agency's areas of expertise, such as determining what is or is not a drug. Rather, the request for injunctive relief seeks to force Defendant to change its advertising if it is in fact misrepresenting the standard, characteristics, uses, benefits and/or qualities of the product. Whether Defendant's product contains or does not contain what is listed on its label is a verifiable fact which does not require reclassification of an ingredient as a drug, and whether Defendant's product does what it is advertised to do is also a verifiable fact which does not require reclassification of an ingredient as a drug.

The demurrer to the fifth cause of action on this ground is OVERRULED.

6.    Sixth Cause of Action - Fraud

In order to plead a claim for fraud, a complaint must allege: 1) misrepresentation; 2) knowledge of falsity; 3) intent to defraud; 4) justifiable reliance; 5) resulting damage. Hunter v. Up-Right, Inc. (1993) 6 Cal. 4th 1174, 1184.  Fraud causes of action must be pled with specificity.  Hills Transportation Co. v. Southwest Forest Ind., Inc. (1968) 266 Cal.App.2d 702, 707.  The complaint must allege facts as to "'how, when, where, to whom, and by what means the representations were tendered.'"  Stansfield v. Starkey (1990) 220 Cal. App. 3d 59, 73.

Here, Plaintiff does not allege damage as a result of any particularly false misrepresentation.  Plaintiff does not allege what harm she, or other class members, suffered other than purchasing the product based on Defendant's advertisements.  Plaintiff has not plead *with the requisite factual specificity* that she experienced Defendant's Meltdown product as not performing as advertised, or that she suffered side effects as a result of an ingredient which she believed was not contained in the product.  See Complaint at ¶¶ 118-128.

The demurrer to the sixth cause of action is SUSTAINED with leave to amend.

7.    Seventh Cause of Action – Unjust Enrichment

"[T]here is no cause of action in California for unjust enrichment. 'The phrase "Unjust Enrichment" does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so.'  (Citation omitted.  ) Unjust enrichment is ' "a general principle, underlying various legal doctrines and remedies," ' rather than a remedy itself. (Citation omitted.) It is synonymous with restitution. (Citation omitted.)" Melchior v. New Line Productions, Inc., (2003) 106 Cal.App.4th 779, 793.

See also Durell v. Sharp Healthcare (2010) 183 Cal.App.4th 1350, 1370 ("[T]here is no cause of action in California for unjust enrichment." (Citations omitted.) Unjust enrichment is synonymous with restitution. (Citation omitted.); McKell v. Washington Mutual, Inc. (2006) 142 Cal.App.4th 1457, 1490 ("There is no cause of action for unjust enrichment. Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust. (Citation omitted.)")

The demurrer to the seventh cause of action is SUSTAINED without leave to amend.

**Motion To Strike**

Defendant's Motion to Strike is DENIED in its entirety in that the Court has denied Defendant's Request for Judicial Notice, which forms the basis of a large portion of Defendant's Motion to Strike.  Also, the ruling on the demurrer moots much of the motion to strike as well. Defendant's argument that puffery is non-actionable is not a ground for striking other allegations.  The allegations regarding unjust enrichment are moot given the ruling on the demurrer.

II.      Defendant John H. Owoc

**Demurrer**

Defendant Owoc basically joins in the VPX's demurrer.  Thus, the same ruling applies. Defendant also attacks the allegations in ¶¶ 14.b and 27 as being non-actionable puffery. However a demurrer does not lie to a part of a cause of action—in fact, here, these allegations are not even part of a particular cause of action.

**Motion To Strike**

Defendant Owoc's Motion to Strike was brought in the same brief as VPX's.  Thus, the same ruling applies.

**~~TENTATIVE~~ RULING**

Defendants' Demurrer is SUSTAINED with leave to amend as to the first, second, third, fourth and sixth causes of action, SUSTAINED without leave as to the seventh cause of action, and OVERRULED as to the fifth cause of action.

Defendants' Motion to Strike is DENIED in its entirety.

**EXHIBIT 4**

<u>**LOS ANGELES COUNTY SUPERIOR COURT FOR THE STATE OF CALIFORNIA**</u>

# If you purchased the Sensa® Weight Loss System, you could get a payment from a class action settlement.

*A court authorized this notice.  This is not a solicitation from a lawyer.*

- A settlement has been reached in a class action lawsuit regarding the Sensa® Weight Loss System ("Sensa®").

- In the lawsuit, Plaintiffs raised questions regarding the basis for certain of the advertising claims made regarding the product.  The Defendant voluntarily provided copies of its advertisements and details regarding the scientific basis for its claims.  Following this exchange, the parties reached an agreement in order to avoid the time and expense associated with litigation.

- The Court has not ruled, one way or the other, on Plaintiffs' challenges to the advertising.

- Your legal rights are affected whether you act or do not act.  <u>Read this notice carefully</u>.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to receive a payment. |
| **EXCLUDE YOURSELF** | Receive no payment.  This is the only option that allows you to ever be part of any other lawsuit against the Defendant or anyone else about the legal claims in this case. |
| **OBJECT** | Write to the Court about why you do not like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Receive no payment.  Give up rights. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement.  Payments will be made if the Court approves the settlement and after appeals are resolved.  Please be patient.

- Any questions?  Read on and visit www.weightlosssettlement.com.

| WHAT THIS NOTICE CONTAINS |
|---|

Basic Information.................................................................................................................3

    1.    Why did I get this notice package?.....................................................................3

    2.    What is this lawsuit about?.................................................................................3

    3.    What is a class action?.......................................................................................3

    4.    Why is there a settlement?.................................................................................3

Who is in the Settlement ......................................................................................................3

    5.    How do I know if I am part of the settlement? ..................................................3

The Settlement Benefits – What You Get..............................................................................4

    6.    What does the settlement provide?.....................................................................4

How You Get Benefits – Submitting a Claim Form................................................................4

    7.    How can I get a payment or other benefits? ......................................................4

    8.    When will I receive benefits? ............................................................................4

    9.    What am I giving up if I stay in the Settlement Class?.......................................4

Excluding Yourself From The Settlement .............................................................................5

    10.    How do I exclude myself from the settlement? ..................................................5

    11.    If I do not exclude myself, can I sue the Defendant or anyone else for the same thing later?.................................................................................................................5

    12.    If I exclude myself, can I get benefits from this settlement?..............................5

The Lawyers Representing You.............................................................................................5

    13.    Do I have a lawyer in this case?.........................................................................5

    14.    How will the lawyers be paid?............................................................................6

Objecting To The Settlement ...............................................................................................6

    15.    How do I tell the Court that I do not like the settlement?..................................6

    16.    What is the difference between objecting and excluding?...................................6

The Court's Final Approval Hearing ....................................................................................7

    17.    When and where will the Court decide whether to approve the settlement?......7

    18.    Do I have to come to the hearing? .....................................................................7

    19.    May I speak at the hearing? ...............................................................................7

If You Do Nothing...............................................................................................................8

    20.    What happens if I do nothing at all? ..................................................................8

Getting More Information ....................................................................................................8

    21.    Are there more details about the settlement?....................................................8

    22.    How do I get more information?.........................................................................8

## BASIC INFORMATION

| 1. | Why did I get a notice? |
|---|---|

You purchased Sensa® prior to August 21, 2012, you have a right to know about a proposed settlement of a class action lawsuit and your options.  The Los Angeles County Superior Court of the State of California has preliminarily approved the proposed settlement.

If the Court grants final approval to the settlement, and after any appeals are resolved, an administrator appointed by the Court will distribute the benefits under the settlement.  The settlement website will provide updates regarding the progress of the settlement.

This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The case is known as *Danielle Correa and Jennifer Teeples v. Sensa Products, LLC, et al*, Case No. BC476808.  The persons who sued are called the Plaintiffs, and the company they sued, Sensa Products, LLC, is called the Defendant.

| 2. | What is this lawsuit about? |
|---|---|

This lawsuit is about the advertising for Sensa®.  The Complaint alleges that Defendant did not have a sufficient scientific basis for certain of its marketing claims.  Defendant disputes these allegations and contends that its marketing claims are substantiated by three product studies and a significant body of scientific research regarding neurology and the science of smell and taste.  These parties reached an agreement to avoid the time and expense associated with further litigation.

| 3. | What is a class action? |
|---|---|

In a class action, one or more people, called Class Representatives (in this case, Danielle Correa and Jennifer Teeples), sue on behalf of people who have similar claims.  One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.  A judge in the Los Angeles County Superior Court in California is overseeing this class action.

| 4. | Why is there a settlement? |
|---|---|

The Court did not decide in favor of Plaintiffs or Defendant.  Instead, both sides agreed to a settlement.  That way, they avoid the time and expense of going to trial.  The Class Representatives and their attorneys think the settlement is best for everyone.

## WHO IS IN THE SETTLEMENT

| 5. | How do I know if I am part of the settlement? |
|---|---|

The Court previously decided that everyone who fits the following description is a Class Member:

All people who purchased Sensa® prior to August 21 2012.  Excluded from the settlement are Linda Breeding, Melanie Gordon, Polin Mahboubian, and Shahriyar Bolandian.  Also excluded are all persons who properly and timely opt out of the settlement.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

| | |
|---|---|
| **6.** | **What does the settlement provide?** |

If approved, the proposed settlement will provide up to $6,000,000 for notice/administration costs, class representative payments, and cash benefits to class members who submit a claim and up to $3,000,000 in fees and costs for the lawyers who represented the settlement class  More specifically:

- A Court-appointed administrator will receive compensation to implement a class Notice Program and to assist in the processing of claims submitted by Settlement Class members.

- Settlement Class members who submit a timely and complete Claim Form will receive a payment based on, among other things, how many of the approximately 2,600,000 class members submit a timely and valid Claim Form.

- Subject to Court approval, the Class Representatives (Jeanette McClendon, Angela Cordova, Angie Cruz, and Andrea Gladstone) may each receive a service payment of up to $2,500 for their role in this lawsuit.

## HOW YOU GET BENEFITS – SUBMITTING A CLAIM FORM

| | |
|---|---|
| **7.** | **How can I get a payment?** |

To qualify for a payment under the settlement, you must submit a Claim Form. You can download a Claim Form on the Internet at www.weightlosssettlement.com.  Read the instructions carefully and mail the Claim Form so that it is postmarked no later than **December 13, 2012**.

| | |
|---|---|
| **8.** | **When will I receive my payment?** |

The Court will hold a hearing on **November 7, 2012**, to decide whether to approve the settlement.  If the Court approves the settlement, there may be appeals.  It is always uncertain whether these appeals can be resolved, and resolving them can take up to a year or more.  The settlement website will keep you informed of the progress of the settlement.  Please be patient.

| | |
|---|---|
| **9.** | **What am I giving up if I stay in the Settlement Class?** |

Unless you exclude yourself, you will remain a member of the Settlement Class.  This means that you cannot sue, continue to sue, or be part of any other lawsuit against the Defendant (refer to question no. 11 below) or anyone else about the legal issues in this case.  If you stay in the Settlement Class, all of the Court's orders will apply to you and legally bind you.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want any benefits from this settlement, but you want keep the right to sue or continue to sue the Defendant or anyone else, on your own, about the legal issues in this case, then you must take steps to get out. This is called excluding yourself – or is sometimes referred to as opting out of the Settlement Class. Defendant may withdraw and terminate the Class Settlement Agreement if a certain number of putative Settlement Class members exclude themselves.

| | |
|---|---|
| **10.** | **How do I exclude myself from the settlement?** |

To exclude yourself from the settlement, you must submit a letter by mail saying that you want to be excluded from the Settlement Class in *Danielle Correa and Jennifer Teeples v. Sensa Products, LLC*. Be sure to include your name, address, telephone number, and your signature. You must mail your exclusion request so that it is postmarked no later than **October 29, 2012**, to:

Correa v. Sensa Products, LLC
c/o GCG
P.O. Box 9831
Dublin, OH 43017-5731

You cannot exclude yourself by phone or by e-mail. If you mail an exclusion request by the deadline, you will not get any settlement benefits and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) the Defendant in the future.

| | |
|---|---|
| **11.** | **If I do not exclude myself, can I sue the Defendant or anyone else for the same thing later?** |

No. Unless you exclude yourself, you give up the right to sue the Defendant or anyone else for the claims resolved by this settlement.

You must exclude yourself from the Settlement Class to participate in any litigation against the Defendant or anyone else regarding the claims resolved by this settlement. Remember, the exclusion deadline is **October 29, 2012**.

| | |
|---|---|
| **12.** | **If I exclude myself, can I get benefits from this settlement?** |

No. If you exclude yourself, do not send in a Claim Form to ask for any benefits. But, you may sue, continue to sue, or be part of a different lawsuit.

## THE LAWYERS REPRESENTING YOU

| | |
|---|---|
| **13.** | **Do I have a lawyer in this case?** |

The lawyers and law firm of Bursor & Fisher, P.A. and Milberg LLP represent you and other Settlement Class members. Together, the lawyers are called Settlement Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

| 14. | How will the lawyers be paid? |
| --- | --- |

Settlement Class Counsel will ask the Court for an award of attorneys' fees, costs, and expenses up to $3,000,000. The Court may award less than this amount.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the settlement or some part of it.

| 15. | How do I tell the Court that I do not like the settlement? |
| --- | --- |

If you are a Settlement Class member, you can object to the settlement if you do not like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. (If you object, you can still participate in the settlement – and receive money if it is approved – notwithstanding your objection.)

To object, you must send a letter saying that you object to the *Danielle Correa and Jennifer Teeples v. Sensa Products, LLC* settlement. The objection must include the following: (i) the name of this action; (ii) the objecting Settlement Class member's full name, address, telephone number, and signature (an attorney's signature is not sufficient); (iii) a statement that the objector is a Settlement Class member and an explanation of the basis upon which the objector claims to be a Settlement Class member; (iv) all grounds for the objection, accompanied by any legal support known to the objector or his or her counsel; (v) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection; (vi) a statement confirming whether the objector or any counsel representing the objector intends to personally appear and/or testify at the Final Approval Hearing; (vii) a list of any persons who may be called to testify at the approval hearing in support of the objection (viii) the number of times in which the objector, objector's counsel (if any), or objector's counsel's law firm (if any) has objected to a class action settlement within the three years preceding the date that the objector files the objection and the caption of each case in which such an objection was made; and (ix) a statement disclosing any consideration that the objector, objector's counsel (if any), or objector's counsel's law firm (if any) has received in connection with the resolution or dismissal of an objection to a class action settlement within three years preceding the date that the objector files the objection. Mail the objection to the Claims Administrator and Settlement Class Counsel so that it is postmarked no later than **October 29, 2012**:

| | |
| --- | --- |
| Correa v. Sensa Products, LLC | BURSOR & FISHER, P.A. |
| c/o GCG | 1990 North California Blvd., Suite 940 |
| P.O. Box 9831 | Walnut Creek, CA 94596 |
| Dublin, OH 43017-5731 | |

| 16. | What is the difference between objecting and excluding? |
| --- | --- |

Objecting is simply telling the Court that you do not like something about the settlement. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class. If you exclude yourself, you have no basis to object because the case no longer affects you. If you object, you still can submit a Claim Form.

### The Court's Final Approval Hearing

The Court will hold a hearing to decide whether to approve the settlement.  You may attend and you may ask to speak, but you do not have to.

| 17. | When and where will the Court decide whether to approve the settlement? |
|---|---|

The Court will hold a Final Approval Hearing at **10:30 a.m. on November 7, 2012**, in Department 309 at the Los Angeles County Superior Court located at 600 South Commonwealth Avenue, Los Angeles, California 90005.  At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing.  The Court may also decide how much to pay Settlement Class Counsel and the Class Representative.  After the hearing, the Court will decide whether to approve the settlement.  We do not know how long these decisions will take.

| 18. | Do I have to come to the hearing? |
|---|---|

No.  Settlement Class Counsel will answer any questions from the Court regarding the settlement.  However, you are welcome to come at your own expense.  If you send an objection, you do not have to come to Court to talk about it.  As long as you mailed your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but it is not necessary.

| 19. | May I speak at the hearing? |
|---|---|

You may ask the Court for permission for you or your lawyer to speak at the Final Approval Hearing.  To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Danielle Correa and Jennifer Teeples v. Sensa Products, LLC*."  Be sure to include your name, address, telephone number, and your signature.  If your lawyer intends to speak at the Final Approval Hearing, your letter must also include the name, address, and telephone number of your lawyer.  Your Notice of Intention to Appear must be mailed to the Claims Administrator and Settlement Class Counsel and postmarked no later than **October 29, 2012 to:**

| | |
|---|---|
| Correa v. Sensa Products, LLC | BURSOR & FISHER, P.A. |
| c/o GCG | 1990 North California Blvd., Suite 940 |
| P.O. Box 9831 | Walnut Creek, CA 94596 |
| Dublin, OH 43017-5731 | |

You cannot speak at the Final Approval Hearing if you excluded yourself.

## IF YOU DO NOTHING

| **20.     What happens if I do nothing at all?** |
|---|

If you do nothing, you will get no money from this settlement.  But, unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit about the legal issues in this case, ever again.

## GETTING MORE INFORMATION

| **21.     Are there more details about the settlement?** |
|---|

This notice summarizes the proposed settlement. More details are in the Class Settlement Agreement. You can get a copy of the Class Settlement Agreement by writing to the Claims Administrator at:

Correa v. Sensa Products, LLC

c/o GCG

P.O. Box 9831

Dublin, OH 43017-5731

| **22.     How do I get more information?** |
|---|

You can visit the settlement website at [www.weightlosssettlement.com](http://www.weightlosssettlement.com), where you will find answers to common questions about the settlement, a Claim Form, plus other information. You may also contact Settlement Class Counsel at Bursor & Fisher, P.A., 1990 North California Boulevard, Suite 940, Walnut Creek, California, 94596.

August 21, 2012          The Honorable Anthony R. Mohr, Los Angeles County Superior Court

**EXHIBIT 5**

1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)

2

Sarah N. Westcot (State Bar No. 264916)
1990 North California Boulevard, Suite 940

3

Walnut Creek, CA 94596
Telephone:  (925) 300-4455

4

Facsimile:  (925) 407-2700
E-Mail:  ltfisher@bursor.com

5

        swestcot@bursor.com

6

**MILBERG LLP**
Jeff S. Westerman (State Bar No. 94559)

7

300 South Grand Avenue, Suite 3900
Los Angeles, CA 90071

8

Telephone:  (213) 617-1200
Facsimile:  (213) 617-1975

9

E-Mail: jwesterman@milberg.com

10

*Attorneys for Plaintiffs and*

11

*Interim Class Counsel*

12

[additional counsel listed on signature page]

13

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

14

15

IN RE SENSA WEIGHT LOSS SYSTEM

16

LITIGATION

Case No. C11-01650 YGR
Hon. Yvonne Gonzalez Rogers

17

**CONSOLIDATED CLASS ACTION COMPLAINT**

18

19

**JURY TRIAL DEMANDED**

20

21

22

23

24

25

26

27

28

1    Plaintiffs Jeannette McClendon, Angela Cordova, and Angie Cruz, by their undersigned

2  attorneys, bring this consolidated class action complaint against Sensa Products, LLC, Alan R.

3  Hirsch, Intelligent Beauty, Inc., General Nutrition Corporation, and General Nutrition Centers, Inc.

4  (collectively, "Defendants").  Plaintiffs' allegations are based upon personal knowledge as to their

5  own acts and upon information and belief as to all other matters.

6                                    **NATURE OF THE ACTION**

7          1.        This is a class action lawsuit on behalf of purchasers of the Sensa Weight Loss

8  System ("Sensa"), which is marketed as a "NEW, clinically proven method of losing weight" with

9  "no food restriction, and no change in lifestyle."[1]  Sensa consists of shakers of "magic" "tastant"

10  "crystals," also described as "sprinkles," which users are instructed to sprinkle on their food.

11  According to the sales pitch, users can lose 30+ pounds without dieting or exercise, simply by

12  sprinkling Sensa crystals on their food:



24  Moreover, as the foregoing graphic shows, this strange approach to weight loss is "Doctor

25  Formulated" and "Clinically Proven."

26

27  _____

28  [1] www.trysensa.com (May 17, 2008), attached hereto as Exhibit A.

CONSOLIDATED CLASS ACTION COMPLAINT

2.      According to the sales pitch, Sensa crystals work with your sense of smell to stimulate an area of your brain called the "satiety center," which "tells your body it's time to stop eating."  As a result, you eat less and lose weight.

3.      This sales pitch is false, misleading, and unsubstantiated because there is no competent and reliable scientific evidence to substantiate these claims.  Sensa crystals have never been proven efficacious for weight loss and have never been proven to have any effect on the "satiety center" of the brain.  In fact, Sensa crystals are ineffective.

4.      This graphic, obtained from the Sensa website, illustrates how Sensa purports to "help you lose weight safely and naturally, without dieting":



The website also depicts the miraculous weight loss properties of Sensa crystals with an animation showing Sensa being sprinkled on food while a meter in the user's brain shows empty:

1

2

3

4

5

6

7

8

9

10

11

12



13  Sensa crystals, however, "activate[] the hunger control switch in the brain," so the meter goes to

14  full:

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   These images illustrate the "scientific principle behind Sensa": "As you eat smell and taste

2   receptors send messages to your brain which release hormones that tell your body it's time to stop

3   eating. This is a phenomenon we call Sensory Specific Satiety. By enhancing smell, SENSA®

4   Tastants were designed to help speed up the process and trigger your 'I feel full' signal, so you eat

5   less and feel more satisfied."[2] All of this is presented with the phrase "CLINICALLY PROVEN"

6   prominently displayed.

7        5.    Plaintiffs were tricked by Defendants' false, misleading and unsubstantiated sales

8   pitch for Sensa crystals, and purchased Sensa crystals in reliance thereon. They bring this action as

9   a class action, on behalf of themselves and other purchasers of Sensa crystals, and assert claims

10  against Defendants for violations of the Magnuson-Moss Warranty Act, California's Consumers

11  Legal Remedies Act; California's False Advertising Law; the unlawful, unfair and fraudulent and

12  deceptive prongs of California's Unfair Competition Law; Florida's Deceptive and Unfair Trade

13  Practices Act; and Texas's Deceptive Trade Practices Act; for breach of implied and express

14  warranties; and for negligent misrepresentation.

15                              **BACKGROUND**

16       6.    According to a September 2002 Federal Trade Commission Staff Report,[3] being

17  overweight and obesity have reached epidemic proportions, afflicting 6 out of every 10 Americans.

18  At the same time, nearly 29% of men and 44% of women who are trying to lose weight (an

19  estimated 68 million American adults) comprise a huge potential market for sellers of weight-loss

20  products and services. Consumers spent an estimated $34.7 billion in 2000 on weight-loss products

21  and programs. The marketplace has responded with a proliferating array of products and services,

22  many promising miraculous, quick-fix remedies. And the FTC has found that "[t]he use of false or

23  misleading claims in weight-loss advertising is rampant."[4]

24  _____

    [2] http://www.trysensa.com/how-sensa-works.htm (accessed March 31, 2011).

25

26  [3] Weight Loss Advertising: An Analysis of Current Trends, A Federal Trade Commission Staff
    Report, September 2002 (hereafter, "FTC Staff Report"), available at

27  http://www.ftc.gov/bcp/reports/weightloss.pdf.

28  [4] *Id.*, Executive Summary, at p. x.

_____

7.      Into this lucrative market stepped a particularly sophisticated huckster – one with a medical degree and a thick stack of junk science to support the claim that his magic crystals are "clinically proven" to promote weight loss without diet or exercise.  Dr. Alan Hirsch, M.D., is a board-certified neurologist.  His name and photograph appear on Sensa's packaging, website, advertisements, and promotional literature, together with claims that he has conducted and published more than 200 research studies, authored 7 books, and appeared on numerous television programs including Dateline NBC, CNN, the CBS Early Show, Good Morning America and Extra.  Dr. Hirsch's 20-plus years of research regarding the impact of smell and taste on weight loss culminated in the patent-pending technology used in the SENSA® Weight-Loss System.  Omitted from these descriptions is the fact that in all these 20 years of research neither Dr. Hirsch, nor any other medical professional, has produced any competent and reliable scientific evidence to substantiate the claim that Sensa crystals effectively promote weight loss.  Nevertheless, recent changes in the law limiting governmental oversight of weight loss products created an opportunity for Dr. Hirsh to market Sensa crystals without government scrutiny of the junk science underlying the product.

8.      Prior to 1994, weight-control products were regulated as drugs, and an over-the-counter (OTC) product labeled for weight control was misbranded under Section 502 of the Food, Drug, and Cosmetic Act unless it was either generally recognized as safe and effective or was an approved new drug.  *See* FTC Staff Report at 27.  With some limited exceptions not pertinent here, an OTC product labeled for weight control required some form of pre-market review and approval by the Food and Drug Administration ("FDA") to determine safety and effectiveness.  *Id.* at 28.  "In 1994, the passage of the Dietary Supplement Health and Education of 1994 (DSHEA) dramatically changed the regulatory framework for weight-loss supplements, shifting FDA's role from premarket clearance to post-market enforcement and shifting the responsibility from government to industry to ensure products were safe and effective."  *Id.*  According to the FTC, "this change in regulatory structure has coincided with a dramatic increase in the number of dietary supplement weight-loss products as well as the amount of weight-loss product advertising."  *Id.*  Dr. Hirsch took advantage

of this change in regulatory structure to market Sensa crystals to millions of consumers who would be unable to decipher and debunk the junk science behind the product.

## THE PARTIES

**Defendants**

9.      Defendant **Sensa Products, LLC** is a Delaware corporation, registered with the California Secretary of State to conduct business in California.  Sensa Products, LLC's principal place of business is in El Segundo, California.

10.      Defendant **Alan R. Hirsch** is a citizen of Illinois.

11.      Defendant **Intelligent Beauty, Inc.**, is a Delaware Corporation registered with the California Secretary of State, with its headquarters and principal place of business in Manhattan Beach, California. Intelligent Beauty, Inc. has an ownership interested in Sensa Products, LLC.

12.      Defendant **General Nutrition Corporation** ("GNC Corp.") is a Pennsylvania Corporation that has its principal place of business in Pennsylvania.

13.      Defendant **General Nutrition Centers, Inc**. ("GNC Inc.), is a Delaware corporation that has its principal place of business in Pennsylvania. GNC Inc. is a wholly owned subsidiary of GNC Corp. GNC Inc. and GNC Corp. are collectively referred to as GNC.

14.      GNC advertises promotes, distributes, and sells Sensa's product to consumers. It advertises the product in its website and through in-store displays. It has received and will continue to receive substantial benefits and income from its activities through promotion, distribution, and sale of the product. GNC sold Sensa's products to consumers throughout the United States, and authorized the false, misleading, deceptive, fraudulent, and unlawful misrepresentations about the product through its officers, directors, and agents.

**Plaintiffs**

15.      Plaintiff **Jeannette McClendon** is a California citizen residing in Contra Costa County, California. She initially purchased Sensa crystals in 2008 and made additional purchases in 2009 and 2010, including purchases made directly through the website, www.trysensa.com.  She purchased Sensa crystals after seeing advertisements claiming the crystals were clinically proven to

help people lose weight without dieting or exercise. The advertisements also stated that people using Sensa crystals could eat whatever they want and still lose weight. The representations made in those advertisements were substantial factors influencing Ms. McClendon's decision to purchase Sensa crystals. If she had not seen those representations, Ms. McClendon would not have purchased Sensa crystals.

16.     Plaintiff **Angela Cordova** is a resident of Miami, Florida who purchased Sensa crystals in reliance on Sensa's advertisements. She purchased the product in 2011 through the website, www.trysensa.com and made additional purchases every 30 days after. She purchased Sensa crystals after seeing commercials claiming the crystals were clinically proven to help people lose weight without dieting or exercise. The representations made in those commercials ultimately influenced Ms. Cordova's decision to purchase Sensa crystals. If she had not seen those advertisements, Ms. Cordova would not have purchased Sensa crystals.

17.     Plaintiff **Angie Cruz** is a resident of Houston, Texas who purchased Sensa crystals in reliance on Sensa's advertisements. She initially purchased in 2011 through the website, www.trysensa.com after seeing a commercial claiming you could lose weight just by sprinkling the crystals on your food without dieting or exercising. The representations made in those commercials ultimately influenced Ms. Cruz's decision to purchase Sensa crystals. If she had not seen those advertisements, Ms. Cruz would not have purchased Sensa crystals.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed Class are in excess of $5,000,000.00, exclusive of interest and costs and most members of the proposed Class are citizens of states different from the state of Defendants.

19.     This Court has personal jurisdiction over Sensa Products, LLC because it is registered with the California Secretary of State to conduct business within California. In addition, it conducts substantial business within California.

20.     This Court has personal jurisdiction over Dr. Alan R. Hirsch because he purposefully directed his activities at California residents through his active participation in the fraudulent sale and marketing of Sensa crystals to California residents.  Specifically, Dr. Hirsch created Sensa crystals with the intention that they would be marketed and sold to California residents.  He has also appeared in television advertisements and infomercials promoting Sensa crystals that have aired on television in California.  Dr. Hirsch has also promoted Sensa crystals on television programs that air in California such as Extra TV and KTLA Prime News.  *See* http://www.trysensa.com/news-stories.htm.

21.     This Court has personal jurisdiction over Intelligent Beauty, Inc. because it is registered with the California Secretary of State to conduct business within California and is headquartered in California.  In addition, it conducts substantial business within California.

22.     This Court has personal jurisdiction over GNC Corp. and GNC Inc. because they conduct substantial business within California, including the sale, marketing, and advertising of Sensa, and have retail stores in California.

23.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants transact significant business within this District, and because Plaintiff McClendon purchased Sensa crystals in this District.

## **THE MARKETING OF SENSA**

24.     In early 2008, Dr. Hirsh and Sensa Products LLC announced what was "Quite possibly the most important weight-loss discovery of the 21st century."[5]  Through their website, they explained that Sensa is "an entirely NEW, clinically proven method of losing weight … [with] no food restrictions, and no change in lifestyle."[6]  These statements were false in at least three respects.  *First*, Sensa was not "entirely NEW."  Dr. Hirsch had previously marketed his magic tastant crystals in 2004, at which time he called the product "Sprinkle Thin."  By 2005, Sprinkle Thin had been pulled from the market and the company that had sold it was out of business.  So

---

[5] www.trysensa.com (May 17, 2008), attached hereto as Exhibit A.

[6] *Id.*

when the product was reincarnated as "Sensa crystals" in 2008, it was not "entirely NEW." *Second*, Sensa crystals were not a "clinically proven" method of losing weight.  In 2008 there was no reliable scientific evidence showing that Sensa crystals had any effect on weight loss or is there such evidence today.  *Third*, the claim that Sensa could cause weight loss without diet or exercise is a "red flag" weight loss claim which the FTC has found is "almost always deceptive."[7]

25.     The FTC has also identified claims of scientific proof and doctor endorsements as common tactics used by weight-loss hucksters:

> "And for those who remain skeptical, there is an answer.  The products are backed by 'clinical studies' or are 'clinically tested' …. Even if they do not purport to be clinically proven, many claim to be the product of years of scientific research … or are doctor recommended."

FTC Staff Report at 6.

> "Phrases like 'the clinically proven healthy way to lose weight,' 'clinically tested,' 'scientifically proven,' and 'studies confirm' bestow products with an aura of scientific legitimacy and aim to persuade consumers that they should feel confident that a product will work."

*Id.* at 17.  This tactic is at the very core of the Sensa scam, as nearly every element of the product labeling, every advertisement, and every page of the Sensa website emphasizes that Sensa crystals are "Clinically Proven" to work, and were developed by Dr. Hirsch through "20-plus years of research."

26.     When it launched in 2008, Sensa's website, attached as Exhibit A, touted "more than 2 decades of research."  It stated that "Sensa's exclusive Tastant Technology is proven in clinical testing to produce an average weight loss of 30.5 pounds in just 6 months."  It stated that "Sensa is

---

[7] Federal Trade Commission, Weighing the Evidence: Substantiating Claims for Weight Loss Products, available at http://business.ftc.gov/documents/weighing-evidence-substantiating-claims-weight-loss-products ("The FTC has listed seven 'red flag' weight loss claims that are almost always deceptive.  Think twice before participating in the promotion of any product that says it can cause weight loss without diet or exercise …."); *see also* Federal Trade Commission, Red Flag: Bogus Weight Loss Claims, A Reference Guide For Media On Bogus Weight Loss Claim Detection, available at http://business.ftc.gov/documents/weighing-evidence-substantiating-claims-weight-loss-products ("Claims for diet products that promise weight loss without sacrifice or effort are bogus and in some cases dangerous.").

the ONLY weight-loss system with this revolutionary technology and these amazing clinical results."  Under a link titled "Where's the Proof?," the website presented a bold headline stating "**Clinical Study Proved Average Weight Loss of 30.5 lbs!**"  Under that headline, the text read:

> "In one of the largest clinical studies for a non-prescription weight-loss product ever conducted, 1436 men and women participants were instructed to sprinkle Sensa Tastants on all of their daily food for 6 months.  100 men and women participants were monitored in a placebo group.  The participants were not advised to change their regular diet or exercise and were weighed at the beginning and the end of the study.
>
> At the end of the 6-month study, the average weight loss of the Sensa Tastant group was 30.5 pounds, or an average of 5.1 pounds per month.  The placebo group only lost an average of 2 pounds."

27.    The statements identified in the foregoing paragraph were all false, misleading and unsubstantiated.  *First*, despite the repeated references to a "placebo group," the purported 6-month clinical study was not placebo-controlled.  The references to a "placebo group" are simply false.  Dr. Hirsch later admitted the falsity of those statements and attributed them to a "misunderstanding."  *Second*, the purported "study" was so lacking in rigor that calling it "junk science" would probably overstate its validity.  The study does not appear to have been done at a clinic or medical facility; participants weighed themselves and reported their own weight losses with no outside checks.  They paid Dr. Hirsch $49 per month to participate.  More than a thousand participants dropped out, and no report of their weight loss, or gain, was made.  ABC News showed Dr. Hirsch's "study" to a former Research Director of a National Institutes of Health-funded Research Center, Professor R. Barker Bussell of the University of Maryland.  His reaction was to "laugh out loud."[8]  According to Professor Bussell, Dr. Hirsch's research is beyond worthless – it "has a negative value."[9]

28.    Prior to filing this action, Interim Class Counsel retained an independent expert to review Dr. Hirsch's purported "clinical study."  That expert examined the reports from Dr. Hirsch's

[8] ABC News, Eat Ice Cream, Burgers and Pizza and Still Lose Weight?, available at http://abcnews.go.com/print?id=5495808 (accessed March 31, 2011).

[9] *Id.*

"study" and concluded that it is not scientifically credible and does not support claims that Sensa crystals are effective for weight loss.

29.     Nevertheless, claims that Sensa crystals are "clinically proven" pervade every aspect of Sensa's packaging, labeling, advertisements, and marketing materials.  Front and center on the box, shown below, is the statement "CLINICALLY PROVEN" in all caps, next to a caduceus and the name Alan Hirsch M.D.  The "clinically proven" claim, together with the prominent display of a symbol of medicine, is designed to bestow Sensa crystals with the aura of scientific and medical credibility.  Further down the front center of the box says:

SPRINKLE on your food

EAT what you love

LOSE weight without dieting

30. The right side of the box features a photograph of Dr. Alan Hirsch, together with this text:

> About SENSA® Creator
>
> Dr. Alan Hirsch, M.D., board-certified neurologist, has conducted and published more than 200 research studies, authored 7 books, and appeared on numerous television programs, including Dateline NBC, CNN, the CBS Early Show, Good Morning America, and Extra. Dr. Hirsch's 20-plus years of research regarding the impact of smell and taste on weight loss culminated in the patent-pending technology used in the SENSA® Weight-Loss System.

These statements are also designed to bestow Sensa crystals with the aura of scientific and medical credibility.

31. The left side of the box features the following text:

> It's Proven Effective
>
> $   Based on 25 years of research
>
> $   Tested in multiple clinical studies
>
> $   30 pounds average weight loss

These statements are also designed to bestow Sensa crystals with the aura of scientific and medical credibility, and also to convey the message that Sensa crystals have been scientifically proven effective for weight loss.

32. The back surface of the box features before-and-after photographs of a woman wearing a bikini with high-heels and a fit man flexing his biceps, together with representations that the woman "lost 46 lbs" and the man "lost 93 lbs." Near these photos, the following text appears:

> Clinically Proven
>
> $   SENSA® was proven effective in one of the largest clinical studies ever performed on a non-prescription weight-loss product.
>
> $   Participants were instructed not to change their existing diet or exercise program.
>
> $   1,436 men and women lost an average of 30.5 pounds in just 6 months.

1    Fine print at the bottom repeats the statement:  "Studies show average weight loss of

2    30 lbs. in 6 months."

3          33.     Inside the box is a "Read First" package insert pamphlet.  It shows again the before-

4    and-after pictures of the bikini-clad woman who "lost 46 lbs," as well as another woman who "lost

5    45 lbs."  An asterisk modifies these statements with the following disclaimer:  "Clinical studies

6    show average weight loss of 30 lbs in 6 months."  The pamphlet goes on to explain:

7                   "There are 6 months in the SENSA® Weight-Loss System.  Each
                    month is indicated by the number on the container and contains a new
8                   and different blend of SENSA® that has been clinically proven to
                    help you lose weight."
9
          34.     Also inside the box is a "Usage Guide" package insert booklet.  The booklet states at
10
      page ii:
11
12                "Dr. Hirsch and his team tested more than 4,000 different Tastant
                    combinations to identify the ones that triggered the most weight loss."
13   The booklet states at page 5:

14               $  It's Proven Effective
                        Based on 25 years of research
15                      Tested in multiple clinical studies
                        30 pounds average weight loss
16
17   The booklet states at page 6:

18                "Based on his research, and the remarkable weight-loss results seen in
                    his studies, Dr. Hirsch found that SENSA Tastants help to speed up
19                  the satiety process, thereby helping you to eat less and take in fewer
                    calories, so you can lose weight without giving up your favorite
20                  foods."

21   The booklet states at page 16:

22                "Studies show average weight loss of 30 lbs in 6 months."

23   The booklet states at page 18:

24                "Studies show average weight loss of 30 lbs in 6 months."

25   The booklet states at page 19:

26                "Studies show average weight loss of 30 lbs in 6 months."

27

28

---

CONSOLIDATED CLASS ACTION COMPLAINT                                                                    13

1   The booklet states at page 21:

2        "Studies show average weight loss of 30 lbs in 6 months."

3   And at page 24, the booklet concludes with answers to frequently asked questions, including:

4        "How long will it take until I lose weight?  There is no 'typical'
timeline for losing weight with SENSA.  Although most people lose
5        weight in the very first month, everyone experiences weight loss
differently.  Stick with the system and you will lose weight."
6

     35.    Also inside the box is a "How To DVD."  The video on the DVD features a hostess
7
identified as "Michelle."  Michelle states:
8

9        "The magic lies in the patent pending flavor combinations that trigger
your satiety center so you feel more full and more satisfied.  Over 25
years Dr. Hirsch has tested more than 4,000 tastants to determine the
10       specific combinations that were the most effective in inducing weight
loss."
11

12  (How To DVD video at approximately 3:42.)  Michelle continues:

13       "Dr. Alan Hirsch, creator of the SENSA weight loss system, is
renowned for his 25 years of research on the science of smell and
taste.  He has written six books on the subject, conducted and
14       published more than 180 research studies, and holds multiple patents
related to the use of olfactory mechanisms to influence biological
15       responses.  His research has been cited in major publications
including Time, Good Housekeeping, and USA Today.  And he is a
16       frequent guest on television programs such as Dateline NBC, CNN,
the CBS Early Show, Good Morning America, and Extra."
17

18  (How To DVD video at approximately 5:18.)  Approximately six minutes into the video, Dr. Hirsch

appears and states:
19

20       "During the course of my clinical work as Neurological Director of
the Smell and Taste Treatment and Research Foundation in Chicago, I
21       discovered a critical link between the sense of smell and weight loss.
I observed that many of my patients experienced significant weight
gain after losing their sense of smell.  This makes anatomic sense
22       when you consider that the urge to eat is not governed by the
stomach, but by the satiety center of the brain.  Scents from SENSA
23       tastants travel through the nose and tongue to nerve receptors.  The
receptors send signals that stimulate the olfactory bulb and the taste
24       center in the brain.  This signals the satiety center of the
hypothalamus, which signals to the pituitary gland, triggering the
25       release of hormones that suppress hunger and appetite.

26       With that understanding I theorized that weight loss could also be
achieved through the sense of smell.  We tested this theory in a series
27       of clinical studies using scented flavorless crystals called tastants that
can be sprinkled onto food in order to enhance smell.  We developed
28

---

CONSOLIDATED CLASS ACTION COMPLAINT                14

1
2
3

over 4,000 different tastant combinations to identify the ones that triggered the most weight loss.  It's my hope that my research will benefit millions of people who are struggling with weight issues by helping them take back control of their food and develop healthier eating habits."

Approximately 8 minutes into the video, a man identified as "Ari" appears with a before-and-after

picture and on-screen graphic stating "Ari lost 36 lbs."  Ari states:

"What impressed me was that SENSA is based on 25 years of research and testing.  And it's backed up by scientific proof."

36.   Sensa is promoted and sold through the website www.trysensa.com.  Visitors to this

site are greeted by a video featuring Dayna Devon, depicted in the image below:



She states:

"Hi, I'm Dayna Devon.  I've been a reporter and broadcast journalist for more than 20 years.  So when my producers asked me to do a

1
2
3
4
5
6
7
8
9
10
11
12
13
14

story on a weight loss product called Sensa, I thought, hmmmm, this product sounds too good to be true. You may have read about Sensa in the New York Times and Time Magazine or seen it on Dateline NBC. Sensa's been getting lots of media attention because of a landmark 6-month clinical study [onscreen graphic: "Clinically Proven! 1436 people lost an average of 30 lbs"] in which 1,436 people lost an average of over 30 pounds each. Huh, yeah. And here's the really amazing part. They did it without any drugs or pills. Without changing their eating habits or adding an exercise routine. Sounds too good to be true, right? Yeah, I thought so too. Until I tried Sensa for myself. It's just one of those things you have to try to see how easy it is to lose weight. [Onscreen graphic: "Dayna lost 14 pounds"] That's why we've put together an absolutely incredible offer. For a limited time we'll send you the complete Sensa starter kit to try for 30 days with no obligation to buy. Hundreds of thousands of people have said yes to this offer and you know what? They've lost over a million pounds. Look at these before and after shots. These are all people who've lost lots of weight with Sensa and look at 'em, [Onscreen graphic: "Clinically Proven! Jessica lost 34 pounds! Studies show average weight loss 30 lbs. in 6 months."] they're almost unrecognizable [Onscreen graphic: "Clinically Proven! Belinda lost 34 pounds! Studies show average weight loss 30 lbs. in 6 months."] from their before shots to their after shots. [Onscreen graphic: "Clinically Proven! Ari lost 36 pounds! Studies show average weight loss 30 lbs. in 6 months."] Sensa worked for them and it'll work for you too. [Onscreen graphic: "Clinically Proven! Mike lost 40 pounds! Studies show average weight loss 30 lbs. in 6 months."] We guarantee it.

15   37.   Nearly every page of www.trysensa.com includes the claim that Sensa crystals are

16   "clinically proven" effective for weight loss. The following screenshots are illustrative:

17
18
19
20
21
22
23
24
25
26
27
28









38.   The website, www.trysensa.com, also includes detailed information on the purported clinical studies.  The main page includes the following text and image:



1   The main page also includes a tab at the top labeled "CLINICALLY PROVEN," which links to a

2   page, http://www.trysensa.com/clinical-study.htm, bearing the headline "NO OTHER WEIGHT-

3   LOSS PRODUCT HAS SUCH EXTRAORDINARY CLINICAL RESULTS."   The text below this

4   headline states:

5             Over the course of 25 years, SENSA® creator Dr. Alan Hirsch has
              conducted ongoing research on the effects of smell and taste on eating
6             habits, ultimately leading him to spearhead one of the largest studies
              ever conducted on weight loss.  Over a 6 month period, 1,436 women
7             and men sprinkled scented, flavorless 'Tastant' crystals on everything
              they ate.  Participants were instructed not to change their existing diet
8             or exercise program.

9             The 1,436 people in the treatment group who completed the program
              lost an average of 30.5 pounds - nearly 15% of their total body
10            weight.  Those in the control group lost only 2 pounds, on average.

11            This was followed by a double-blind, placebo-controlled study
              conducted by an independent laboratory, in which participants lost
12            27.5 pounds and about 14% of their body mass, on average.
              Participants were instructed not to change their existing diet or
13            exercise program.  Those in the control group gained half a pound, on
              average.
14

15   Further down the page is large bold type, stating:  "**SENSA® was proven effective in one of the**

16   **largest clinical studies ever performed on a non-prescription weight-loss product.**"  This is

17   followed by a graphic depiction of the results of the purported clinical studies:



39.     With regard to these types of claims that a weight-loss product has been proven effective in clinical studies, the FTC Staff Report on Weight Loss Advertising comments: "Although some advertisements briefly describe the results, and provide some information about the methodology of a particular study, such as the study's duration and number of participating subjects, most of the advertisements fail to give consumers sufficient detail about a study to allow consumers to verify the advertiser's representations."  FTC Staff Report at 17.  That is certainly the case with regard to the purported clinical studies of Sensa crystals.  Neither the advertisements, nor the additional materials available through the website, provide sufficient information to determine the validity of these studies.  For example, the one-page poster of the purported "Double-Blind Placebo-Controlled Lab Study"[10] does not identify an author, nor the facility where the study was done, nor any information on how many participants were assigned to the test and control groups, nor any information about what statistical tests, if any, were done to analyze the data.  However, prior to filing this complaint Interim Class Counsel, on behalf of Plaintiff McClendon, requested that Defendants provide more detailed data from this study, and provided it to an independent expert to review.  That expert concluded the data were not scientifically credible and do not support claims that Sensa crystals are effective for weight loss.

40.     After reviewing the reports from both purported "clinical studies," an independent expert retained by Interim Class Counsel concluded that neither "study" is scientifically credible and, and neither "study" supports claims that Sensa crystals are effective for weight loss.

## CLASS ACTION ALLEGATIONS

41.     Plaintiffs McClendon, Cordova, and Cruz seek to represent a class defined as all persons in the United States who purchased Sensa crystals at any time from four years preceding the filing of the initial complaint in this action through the present (the "National Class").  Excluded from the Class are governmental entities, Defendants, Defendants' affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators, and anyone who purchased Sensa crystals for

---

[10] Available at http://www.trysensa.com/media/pdf/Abstract_Poster_Double_Blind_Study.pdf.

1 resale.  Also excluded is any judicial officer presiding over this matter and the members of their

2 immediate families and judicial staff.

3      42.      Plaintiff McClendon also seeks to represent a subclass defined as all members of the

4 Class who purchased Sensa crystals from within the state of California (the "California Subclass").

5      43.      Plaintiff Cordova seeks to represent a subclass defined as all members of the Class

6 who purchased Sensa crystals from within the state of Florida (the "Florida Subclass").

7      44.      Plaintiff Cruz seeks to represent a subclass defined as all members of the Class who

8 purchased Sensa crystals from within the state of Texas (the "Texas Subclass").

9      45.      Members of the Class, the California Subclass, the Florida Subclass, and the Texas

10 Subclass are so numerous that their individual joinder herein is impracticable.  The precise number

11 of Class members and their identities are unknown to Plaintiffs at this time but will be determined

12 through discovery of Defendants' records.  Class members may be notified of the pendency of this

13 action by mail, email and/or publication.

14      46.      Common questions of law and fact exist as to all Class members and predominate

15 over questions affecting only individual Class members.  These common legal and factual questions

16 include, but are not limited to:

17           (a)      Whether the marketing and advertisements for Sensa included false,

18 misleading and unsubstantiated statements;

19           (b)      Whether Defendants' conduct violated the Magnuson-Moss Warranty Act;

20           (c)      Whether Defendants' conduct violated the CLRA;

21           (d)      Whether Defendants' conduct violated the FAL;

22           (e)      Whether Defendants' conduct violated the UCL's unlawful, unfair, and

23 fraudulent and deceptive prongs;

24           (f)      Whether Defendants' conduct violated Florida's Deceptive and Unfair Trade

25 Practices Act;

26           (g)      Whether Defendants' conduct violated Texas's Deceptive Trade Practices

27 Act;

28

1   (h)   Whether Defendants' conduct breached express or implied warranties; and

2   (i)   Whether Defendants made negligent misrepresentations.

3   47.   Plaintiff McClendon's, Cordova's, and Cruz's claims are typical of the claims of the

4   proposed Class and of each of the Subclasses they seek to represent (California, Florida, and Texas,

5   respectively).   Each Class member was subjected to the same illegal conduct, was harmed in the

6   same way and has claims for relief under the same legal theories.

7   48.   Plaintiffs McClendon, Cordova, and Cruz are adequate representatives of the Class

8   and of each of the Subclasses they seek to represent (California, Florida, and Texas, respectively)

9   because their interests do not conflict with the interests of the Class members they seek to represent,

10   they have retained counsel competent and experienced in prosecuting class actions, and they intend

11   to prosecute this action vigorously.   The interests of Class and Subclass members will be fairly and

12   adequately protected by Plaintiffs and their counsel.

13   49.   The class mechanism is superior to other available means for the fair and efficient

14   adjudication of the claims of Class members.   Each individual Class member may lack the resources

15   to undergo the burden and expense of individual prosecution of the complex and extensive litigation

16   necessary to establish Defendants' liability.   Individualized litigation increases the delay and

17   expense to all parties and multiplies the burden on the judicial system presented by the complex

18   legal and factual issues of this case.   Individualized litigation also presents a potential for

19   inconsistent or contradictory judgments.   In contrast, the class action device presents far fewer

20   management difficulties and provides the benefits of single adjudication, economy of scale, and

21   comprehensive supervision by a single court on the issue of defendant's liability.   Class treatment of

22   the liability issues will ensure that all claims and claimants are before this Court for consistent

23   adjudication of the liability issues.

24   50.   Unless a class is certified, Defendants will retain monies received as a result of their

25   conduct that were taken from Plaintiffs and proposed Class members.   Unless a classwide injunction

26   is issued, Defendants will continue to commit the violations of law alleged, and the members of the

27   Class and the general public will continue to be harmed thereby.

28

CONSOLIDATED CLASS ACTION COMPLAINT                                    22

**COUNT I**

**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.***

51.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

52.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants.

53.     The Sensa Weight Loss System is a consumer product within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

54.     Plaintiffs and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

55.     Defendants are both "suppliers" and a "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4) and (5).

56.     Defendants' statements as alleged herein (including, *inter alia*, statements that Sensa is a "new, clinically proven method of losing weight," "backed up by scientific proof," with "more than 2 decades of research," and "exclusive tastant technology [] proven in clinical testing to produce an average weight loss of 30.5 pounds in just 6 months") are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

57.     As alleged herein, Defendants have has breached this written warranty by selling consumers the Sensa Weight Loss System, which is not in fact "clinically proven," "backed up by scientific proof," supported by "more than 2 decades of research," or "proven in clinical testing to produce an average weight loss of 30.5 pounds in just 6 months" as warranted, thus failing to conform to the written warranty, violating the Magnuson-Moss Warranty Act, and causing Plaintiffs and the Class injury and damage.

**COUNT II**

**Breach of Express Warranty**

58.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

59.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants.

60.     Plaintiffs, and each member of the Class, formed a contract with Defendants at the time Plaintiffs and the other members of the Class purchased Sensa. The terms of that contract include the promises and affirmations of fact made by Defendants in advertisements and the packaging of Sensa as described above. This product packaging and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiffs and the members of the Class on the one hand, and Defendants on the other.

61.     All conditions precedent to Defendants' liability under this contract have been performed by Plaintiffs and the Class.  Defendants breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing a product that was scientifically proven to provide the promised weight-loss benefits.

62.     As a result of Defendants' breach of warranty, Plaintiffs and the Class have been damaged in the amount according to proof.

## **COUNT III**
### **Breach of Implied Warranties**

63.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

64.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants.

65.     Defendants knew that Plaintiffs and other Class members were buying Sensa for a particular purpose – to lose weight – and that Plaintiffs and other Class members relied on Defendants' skill and judgment to select goods fit for that purpose.

66.     Sensa is not fit for this purpose because it does not produce the results that it promises, despite the promises that Defendants made on their advertising, labeling, and packaging. For the same reasons, Sensa was unmerchantable at the time it left the location where it was created,

CONSOLIDATED CLASS ACTION COMPLAINT                                              24

1  and remains unmerchantable at all times after that.   This unmerchantability is inherent in the

2  product.

3     67.     Plaintiffs notified Defendants of the acts constituting breach of the implied

4  warranties of fitness for a particular purpose and merchantability, both for themselves and the Class.

5  Plaintiffs and other Class members suffered injury as a result of these breaches of warranty, for

6  which Plaintiffs hereby pray, because they paid for and received Sensa that was not as warranted.

7  ### COUNT IV

8  **Violation of California's Consumers Legal Remedies Act,**
   **California Civil Code § 1750, *et seq.***

9
10    68.     Plaintiff McClendon incorporates by reference and re-alleges each and every

11 allegation set forth above as though fully set forth herein.

12    69.     Plaintiff McClendon brings this claim individually and on behalf of the members of

13 the proposed California Subclass against Defendants.

14    70.     Defendants violated Civil Code § 1770(a)(2), (5), (7), (9), and (14) by making false,

15 misleading and unsubstantiated statements regarding Sensa crystals.

16    71.     Plaintiff McClendon and the members of the Class and California Subclass have

17 suffered harm as a result of these violations of the CLRA because they have incurred charges and/or

18 paid monies for Sensa crystals that they otherwise would not have incurred or paid.

19    72.     On February 23, 2011, prior to the filing of this Complaint, a CLRA notice letter was

20 served on Defendants Sensa and Hirsch which complies in all respects with California Civil Code

21 §1782(a).   Plaintiff McClendon, through Interim Class Counsel, sent Defendants a letter via

22 certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA

23 and demanding that they cease and desist from such violations and make full restitution by

24 refunding the monies received therefrom.   A true and correct copy of Plaintiff McClendon's CLRA

25 demand letter is attached hereto as Exhibit B.

26    73.     Pursuant to Civil Code § 1780, Plaintiff seeks an order of this Court permanently

27 enjoining Defendants from continuing to engage in their unlawful conduct as alleged herein.

28 Plaintiff also seeks an order of this Court requiring Defendants to:

---

CONSOLIDATED CLASS ACTION COMPLAINT                                        25

1          (a)     Pay damages according to proof;

2          (b)     Immediately cease the conduct alleged herein;

3          (c)     Make full restitution of all monies wrongfully obtained;

4          (d)     Disgorge all ill-gotten revenues and/or profits; and

5          (e)     Pay punitive damages.

6                                    **COUNT V**

7              **Violation of California's False Advertising Law ("FAL"),**
               **Business & Professions Code § 17500 *et seq*.**

8
       74.     Plaintiff McClendon incorporates by reference and re-alleges each and every
9
allegation set forth above as though fully set forth herein.

10
       75.     Plaintiff McClendon brings this claim individually and on behalf of the members of
11
the proposed California Subclass against Defendants.

12
       76.     Defendants violated Business & Professions Code § 17500 by publicly disseminating
13
false, misleading and unsubstantiated advertisements regarding Sensa crystals.

14
       77.     Defendants' false, misleading and unsubstantiated advertisements were disseminated
15
to increase the sales of Sensa.

16
       78.     Defendants knew or should have known that their advertisements for Sensa crystals
17
were false, misleading and unsubstantiated and that those advertisements would induce consumers
18
to purchase Sensa crystals.

19
       79.     Furthermore, Defendants publicly disseminated the false, misleading and
20
unsubstantiated advertisements as part of a plan or scheme and with the intent to sell an unproven,
21
ineffective and worthless product.

22
       80.     Plaintiff McClendon and the members of the Class and California Subclass have
23
suffered harm as a result of these violations of the FAL because they have incurred charges and/or
24
paid monies for Sensa crystals that they otherwise would not have incurred or paid.

25
       81.     Pursuant to Bus. & Prof. Code § 17500, Plaintiff McClendon seeks an order of this
26
Court permanently enjoining Defendants from continuing to publicly disseminate false, misleading
27

28

1  or unsubstantiated advertisements for Sensa crystals as alleged herein.  Plaintiffs also seek an order

2  requiring Defendants to:

3        (a)     make full restitution for all monies wrongfully obtained; and

4        (b)     disgorge all ill-gotten revenues and/or profits.

5  ### COUNT VI

6  **Unlawful Business Practices In Violation of California's Unfair Competition Law ("UCL"),
Business & Professions Code §§ 17200 *et seq.***

7  **(Unlawful Practices)**

8  82.     Plaintiff McClendon incorporates by reference and re-alleges each and every

9  allegation set forth above as though fully set forth herein.

10  83.     Plaintiff McClendon brings this claim individually and on behalf of the members of

11  the proposed California Subclass against Defendants.

12  84.     Defendants violated the unlawful prong of the UCL by violating Civil Code §

13  1770(a)(2), (5), (7), (9), and (14) and Business & Professions Code § 17500 as described above.

14  85.     Defendants also violated the unlawful prong of the UCL by violating the FTC Act,

15  15 U.S.C. § 45(n), because false, misleading and unsubstantiated claims concerning the clinically

16  proven efficacy of Sensa crystals are likely to deceive reasonable consumers and are likely to cause

17  injury to consumers by enticing them to purchase a worthless and ineffective product and to incur

18  charges and/or pay monies for Sensa crystals that they otherwise would not have incurred or paid.

19  These injuries are substantial, and are not reasonably avoidable by consumers who in most cases

20  would be unable to debunk Defendants' bogus claims about the purported efficacy of Sensa

21  crystals.  Furthermore, "The FTC typically requires claims about the efficacy or safety of dietary

22  supplements to be supported with 'competent and reliable scientific evidence,' defined in FTC cases

23  as 'tests, analyses, research, studies, or other evidence based on the expertise of professionals in the

24  relevant area, that have been conducted and evaluated in an objective manner by persons qualified

25  to do so, using procedures generally accepted in the profession to yield accurate and reliable

26

27

28

1  results.'"[11]   Such support was lacking here, thus Defendants' claims concerning the efficacy of

2  Sensa crystals were unsupported and deceptive in violation of the FTC Act.

3    86.    Plaintiff McClendon and the members of the Class and California Subclass have

4  suffered harm as a result of these violations of the unlawful prong of the UCL because they have

5  incurred charges and/or paid monies for Sensa they otherwise would not have incurred or paid.

6    87.    Pursuant to Bus. & Prof. Code § 17203, Plaintiff McClendon seeks an order of this

7  Court permanently enjoining Defendants from continuing to engage in their unlawful conduct as

8  alleged herein.  Plaintiff McClendon also seeks an order requiring Defendants to:

9        (a)    immediately cease the conduct described herein;

10        (b)    make full restitution of all monies wrongfully obtained; and

11        (c)    disgorge all ill-gotten revenues and/or profits.

12  <u>**COUNT VII**</u>

13  **Unlawful Business Practices In Violation Of California's Unfair Competition Law ("UCL"),**
   **Business & Professions Code §§ 17200 *et seq.***
14   **(Unfair Practices)**

15    88.    Plaintiff McClendon incorporates by reference and re-alleges each and every

16  allegation set forth above as though fully set forth herein.

17    89.    Plaintiff McClendon brings this claim individually and on behalf of the members of

18  the proposed California Subclass against Defendants.

19    90.    Defendants' conduct, described herein, violated the unfair prong of the UCL because

20  such conduct violated various laws and policies recognized by the California Legislature and the

21  California courts, including without limitation, the CLRA and FAL, because the utility of

22  Defendants' conduct is significantly outweighed by the gravity of the harms it imposed on

23  consumers, and because Defendants' business practices described herein are oppressive,

24  unscrupulous or substantially injurious to consumers.

25

26  _____

27  [11] Federal Trade Commission, *Dietary Supplements: An Adverting Guide for Industry*, p. 9, available at http://business.ftc.gov/sites/default/files/pdf/bus09-dietary-supplements-advertising-

28  guide-industry.pdf  ("FTC Advertising Guide").

91.     Plaintiff McClendon and the members of the California Subclass have suffered harm as a result of these violations of the unfair prong of the UCL because they have incurred charges and/or paid monies for Sensa they otherwise would not have incurred or paid.

92.     Pursuant to Bus. & Prof. Code § 17203, Plaintiff McClendon seeks an order of this Court permanently enjoining Defendants from continuing to engage in their unfair and unlawful conduct as alleged herein.  Plaintiff McClendon also seeks an order requiring Defendants to:

      (a)     immediately cease their unfair and unlawful acts and practices;

      (b)     make full restitution of all monies wrongfully obtained; and

      (c)     disgorge all ill-gotten revenues and/or profits.

### COUNT VIII

**Unlawful Business Practices In Violation of California's Unfair Competition Law ("UCL"),
Business & Professions Code §§ 17200 *et seq*.
(Fraudulent and Deceptive Practices)**

93.     Plaintiff McClendon incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

94.     Plaintiff McClendon brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

95.     Defendants violated the fraudulent and deceptive prong of the UCL by disseminating false, misleading and unsubstantiated advertisements and marketing materials regarding the effectiveness of Sensa.

96.     Plaintiff McClendon and the members of the  California Subclass have suffered harm as a result of these violations of the fraudulent and deceptive prong of the UCL because they have incurred charges and/or paid monies for Sensa they otherwise would not have incurred or paid.

97.     Pursuant to Bus. & Prof. Code § 17203, Plaintiff McClendon seeks an order permanently enjoining Defendants from continuing to engage in their fraudulent and deceptive conduct alleged herein.  Plaintiff McClendon also seeks an order requiring Defendants to:

      (a)     immediately cease their fraudulent and deceptive acts and practices;

      (b)     make full restitution of all monies wrongfully obtained; and

(c)     disgorge all ill-gotten revenues and/or profits.

## COUNT IX

### Negligent Misrepresentation

98.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

99.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants.

100.    To make a claim for negligent misrepresentation, Plaintiffs must show the following:

(a)     Defendants made representations in the course of their business;

(b)     Defendants supplied "false information" for the guidance of others in their business;

(c)     Defendants did not exercise reasonable care or competence in obtaining or communicating the information; and

(d)     Plaintiffs suffered pecuniary loss by justification relying on the misrepresentation.

101.    All these factors exist here. Defendants advertised and made false, misleading, and deceptive claims about Sensa.  Namely, Defendants claimed that Sensa tastants are sprinkled onto food and the tastants "trigger your 'I feel full' signal, so you eat less and feel more satisfied." Defendants claim that Sensa will allow a consumer to "Lose **30** Pounds Without Dieting" by "Eat[ing] your favorite foods," with "no restrictive dieting," "no calorie counting," and "no sacrifice."

102.    Defendants' representations were not true and Defendants did not exercise reasonable care or competence in obtaining or communicating this information  In fact, Defendants' claims in connection with Sensa are inconsistent with and/or conflict with the guidelines and/or statements of the U.S. FDA which, in an effort to promote real weight loss and to prevent Americans from being defrauded by "miracle pills," instructs that "[t]he only proven way to lose

weight is either to reduce the number of calories you eat or to increase the number of calories you burn off through exercise."

103.     Plaintiffs and the Class relied on Defendants' representations of a guaranteed weight loss without dieting or exercise upon purchasing Sensa.   There would be no other reason to purchase a weight-loss product, other than for weight-loss.  As a result, Plaintiffs and the Class were damaged by their purchase of Sensa.

## COUNT X

### Violations of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA)

104.     Plaintiff Cordova incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

105.     Plaintiff Cordova brings this claim individually and on behalf of the members of the proposed Florida Subclass against Defendants.

106.     The purpose of the FDUTPA is to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the course of any trade or commerce.

107.     Plaintiff Cordova and the Florida Subclass have suffered damages by virtue of buying Sensa that they would not have purchased but for Defendants' unfair marketing, advertising, packaging, and labeling.

108.     The sale of Sensa to Plaintiff Cordova and the Florida Subclass as described herein constitutes the "conduct of any trade or commerce" within the meaning of FDUTPA, Fla. Stat. §§ 501.02 et. seq.

109.     Defendants' misrepresentations and material omissions in its labeling, marketing, and advertising of Sensa as described herein constitute false, deceptive, misleading, and unconscionable practices in violation of the FDUTPA.

110.     Given the vast numbers of consumers who have purchased Sensa, Plaintiff Cordova and the Florida Subclass have been damaged and will continue to be damaged by the false, deceptive, misleading, and unconscionable labeling, advertising, and marketing of Sensa.

### COUNT XI

**Violations of Texas Deceptive Trade Practices Act ("DTPA")**

111.    Plaintiff Cruz incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

112.    Plaintiff Cruz brings this claim individually and on behalf of the members of the proposed Texas Subclass against Defendants.

113.    Defendants engaged in false, misleading, and deceptive practices in violation of the DTPA, which Plaintiff Cruz and other Texas Subclass members relied on to their detriment.

114.    Pursuant to DTPA § 17.50(b)(2), Plaintiff Cruz seeks an order enjoining Defendants' acts or failures to act that violate the DTPA. Plaintiff Cruz served a pre-dispute notice letter on or about February 23, 2011.  A true and correct copy is attached as Exhibit C to this Complaint.

115.    Pursuant to DTPA § 17.50(b)(3), Plaintiff Cruz and the Texas Subclass seek orders necessary to restore to them all money acquired from them by Defendants in violation of the DTPA. They also seek orders necessary to restore to class members whose identities are known to or ascertainable by Defendants all money acquired from them by Defendants in violation of the DTPA.

116.    Pursuant to DTPA § 17.50(b)(4), Plaintiff Cruz and the Texas Subclass seek all other relief which the Court deems proper.

117.    Plaintiff Cruz does not seek economic damages for herself or other Texas Subclass members.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment and relief as follows:

(i)        An order certifying that this lawsuit is properly maintainable as a class action and certifying Plaintiffs McClendon, Cordova, and Cruz as the representatives of the Class; Plaintiff McClendon as the representative of the California Subclass; Plaintiff Cordova as the representative of the Florida Subclass; and Plaintiff Cruz as the representative of the Texas Subclass.

(ii)        For all forms of relief set forth above;

1          (iii)      Damages against Defendants in an amount to be determined at trial,

2 together with pre- and post-judgment interest at the maximum rate allowable by law on any

3 amounts awarded;

4          (iv)      Restitution and/or disgorgement in an amount to be determined at

5 trial;

6          (v)      Punitive damages;

7          (vi)      An order enjoining Defendants from continuing to engage in the

8 unlawful conduct and practices described herein;

9          (vii)      Reasonable attorneys' fees and costs;

10          (viii)      Granting such other and further relief as may be just and proper.

11 **<u>DEMAND FOR TRIAL BY JURY</u>**

12      Plaintiffs demand a trial by jury of all issues so triable.

13

14 Dated: April 2, 2012          Respectfully submitted,

15          By: * /s/ L. Timothy Fisher*
               L. Timothy Fisher

16

17 **BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)

18 Sarah N. Westcot (State Bar No. 264916)
1990 North California Boulevard, Suite 940

19 Walnut Creek, CA 94596
Telephone:  (925) 300-4455

20 Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

21           swestcot@bursor.com

22 **BURSOR & FISHER, P.A.**

23 Scott A. Bursor (State Bar No. 276006)
369 Lexington Avenue, 10th Floor

24 New York, NY 10017
Telephone:  (212) 989-9113

25 Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

26

27

28

**MILBERG LLP**
Jeff S. Westerman (State Bar No. 94559)
300 South Grand Avenue, Suite 3900
Los Angeles, CA 90071
Telephone:  (213) 617-1200
Facsimile:  (213) 617-1975
E-Mail: jwesterman@milberg.com

**MILBERG LLP**
**MILBERG LLP**
Janine L. Pollack
Melissa Ryan Clark
One Pennsylvania Plaza, 49th Floor
New York, NY 10119
Telephone:  (212) 594-5300
Facsimile:   (212) 273-4388
E-Mail: jpollack@milberg.com
           mclark@milberg.com

*Attorneys for Plaintiffs and*
*Interim Class Counsel*

**EDGAR LAW FIRM, LLC**
John F. Edgar
1032 Pennsylvania Avenue
Kansas City, MO  64105
Telephone:  (816) 531-0033
Facsimile:  (816) 531-3322
E-Mail:  jfe@edgarlawfirm.com

*Attorneys for Plaintiffs*

**DESAI LAW FIRM, P.C.**
Aashish Y. Desai (State Bar No. 187394)
8001 Irvine Center Drive, Suite 1450
Irvine, CA 92618
Telephone:  (949) 842-8948
Facsimile:  (949) 271-4190
E-Mail:  aashish@desai-law.com

*Attorney for Plaintiffs*

1    I, Jeannette McClendon, declare as follows:

2    1.      I am a plaintiff in this action and a citizen of the State of California. I have personal

3    knowledge of the facts stated herein and, if called as a witness, I could and would testify

4    competently thereto.

5    2.      The Complaint filed in this action is filed in the proper place for trial under Civil

6    Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred

7    in the Northern District of California. While living in the Northern District of California, I

8    purchased Sensa crystals in 2008 and made additional purchases in 2009 and 2010, including

9    purchases made directly through the website, www.trysena.com. I purchased Sensa crystals after

10   seeing advertisements claiming the crystals were clinically proven to help people lose weight

11   without dieting or exercise. The advertisements also stated that people using Sensa crystals could

12   eat whatever they want and still lose weight. The representations made in those advertisements

13   were substantial factors influencing my decision to purchase Sensa crystals. If I had not seen those

14   representations, I would not have purchased Sensa crystals.

15   I declare under the penalty of perjury under the laws of the State of California that the

16   foregoing is true and correct, executed on April 1, 2011 at _San Francisco_, California.

17

18

19                                           Jeannette McClendon

20

21

22

23

24

25

26

27

28

# EXHIBIT A

INTERNET ARCHIVE
WaybackMachine
BETA

http://www.trysensa.com/    Go

87 captures
17 May 08 - 24 Apr 10

APR    MAY    JUN    Close
◀    17    ▶
2007    2008    2009    Help

# SENSA®

**WHAT IS SENSA?** |

**HOW DOES IT WORK?** |

Where's the Proof?
How to Get Started?

## What is Sensa?

### Quite possibly the most important weight-loss discovery of the 21st century

Forget everything you know about weight loss. Your days of yo-yo dieting, deprivation and frustration are over. Get ready to lose weight the Sensa way — without pills, without the inconvenience and expense of pre-packaged foods, and without having to give up your favorite foods.

Sensa is not a diet. It's an entirely NEW, clinically proven method of losing weight, and it's unlike any other weight-loss program in three very important ways:

- There are no food restriction, and no change in lifestyle. There's no counting points and you can continue to eat all your favorite foods!
- At the heart of the Sensa program is patent-pending Tastant Technology based on more than 20 years of intensive research. Sensa Tastants use your senses of smell and taste as allies in weight loss by speeding up sensory-specific satiety — the biological mechanism that tells you it's time to stop eating!
- Sensa's exclusive Tastant Technology is proven in clinical testing to produce an average weight loss of 30.5 pounds in just 6 months! Sensa is the ONLY weight-loss system with this revolutionary technology and these amazing clinical results.

Based on more than 2
decades of research
See why there's
nothing else like it

30 pounds average weight loss - more
than any other weight loss program
Read more
amazing results

Just sprinkle it on...
Feel full faster...
Eat less...
And lose weight...
Discover how it works

WHAT IS SENSA? |    HOW DOES IT WORK? |    WHERE'S THE PROOF? |    HOW DO I GET STARTED?

2301 Rosecrans Avenue  |  Suite 4100  |  Manhattan Beach, CA 90245-4967  |  (866) 514-2554

© Sensa LLC. All Rights Reserved 2008

INTERNET ARCHIVE
WaybackMachine BETA

http://www.trysensa.com/?action=home.proof    Go

APR  **MAY**  JUN    Close

◄  **18**  ►    Help

1 captures
18 May 08 - 18 May 08

2007  2008  2009

# SENSA®

WHAT IS SENSA?  |

HOW DOES IT WORK?  |

Where's the Proof?
How to Get Started?

Sprinkle Sensa On Your Food
Clinical Study

## Clinical Study Proved Average Weight Loss of 30.5 lbs!

In one of the largest clinical studies for a non-prescription weight-loss product ever conducted, 1436 men and women participants were instructed to sprinkle Sensa Tastants on all of their daily food for 6 months. 100 men and women participants were monitored in a placebo group. The participants were not advised to change their regular diet or exercise and were weighed at the beginning and the end of the study.

At the end of the 6-month study, the average weight loss of the Sensa Tastant group was 30.5 pounds, or an average of 5.1 pounds per month. The placebo group only lost an average of 2 pounds.

Weight Loss After 6 Months

WHAT IS SENSA?  |  HOW DOES IT WORK?  |  WHERE'S THE PROOF?  |  HOW DO I GET STARTED?

2301 Rosecrans Avenue  |  Suite 4100  |  Manhattan Beach, CA 90245-4967  |  (866) 514-2554

© Sensa LLC. All Rights Reserved 2008

# EXHIBIT B

# BURSOR & FISHER, P.A.

## ATTORNEYS AT LAW

2121 North California Blvd., Suite 1010
Walnut Creek, CA 94596-7351
(925) 482-1515 (tel)
(925) 407-2700 (fax)
www.bursor.com

February 23, 2011

*Via Certified Mail - Return Receipt Requested*

Sensa Products, LLC
2301 Rosecrans Ave., Suite 4100
El Segundo, CA 90245

Dr. Alan R. Hirsch
845 North Michigan Avenue, Suite 990W
Chicago, IL 60611

General Nutrition Corp.
300 Sixth Ave.
Pittsburgh, PA 15222

General Nutrition Centers, Inc.
300 Sixth Ave.
Pittsburgh, PA 15222

Re:      *Demand Letter Pursuant to California Civil Code § 1782*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Sensa Products, LLC, Dr. Alan R. Hirsch, General Nutrition Corp. and General Nutrition Centers, Inc., pursuant to the provisions of California Civil Code § 1782, on behalf of our client Jeannette McClendon and all other persons similarly situated.

Sensa is a purported weight loss product that is sprinkled on food.  In the marketing and advertisements for Sensa, you claim that by using the product you can "eat all your favorite foods and still lose weight.  Just sprinkle Sensa onto your meals and snacks to safely and effectively lose weight without feeling deprived."  You also repeatedly claim that the product is "clinically proven" to cause users to lose weight without changing their diet or exercise program.  You also refer to a clinical study in which 1,436 people lost "an average of 30.5 pounds" over a six month period.  These and other similar statements regarding Sensa are false and misleading and induce consumers like Ms. McClendon and others to purchase the product.  By making such false and misleading statements, you have violated numerous provisions of  California law

**BURSOR & FISHER, P.A.**                              page 2

including the Consumers Legal Remedies Act, California Civil Code § 1770, including but not limited to subsections (a)(2), (5), (7), (9) and (14).

We hereby demand that you immediately (1) cease and desist from fraudulently marketing Sensa, and (2) make full restitution of all monies obtained from purchasers of Sensa.

It is further demanded that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.      All documents regarding the advertisement and marketing of Sensa;

2.      All documents concerning the sale of Sensa, including the total amount of money generated from the sale of Sensa;

3.      All documents concerning any clinical studies or other research done regarding the safety and efficacy of Sensa;

4.      All communications with customers and former customers concerning complaints related to Sensa; and

5.      All documents concerning the identity of those individuals who purchased Sensa.

Please comply with this demand within 30 days from receipt of this letter.

We are willing to negotiate with you to attempt to resolve the demands asserted in this letter. If you wish to enter into such discussions, please contact me immediately. If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter, but in no event later than 30 days from the date of receipt.

Very truly yours,

L. Timothy Fisher
ltfisher@bursor.com

# EXHIBIT C

# MOWER, CARREON & DESAI, LLP

AASHISH Y. DESAI
EMAIL: desai@mocalaw.com
M. ADRIANNE DE CASTRO
EMAIL
decastro@mocalaw.com

701 BRAZOS STREET, SUITE 500
AUSTIN, TX 78701
www.mocalaw.com

(512) 716-8930
FAX: (949) 474-9001

November 22, 2011

**VIA CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**

Sensa Products LLC
2301 Rosecrans Ave., Suite 4100
El Segundo, California 90245

      Re:    Notice Pursuant to Texas Bus. & Com. Code § 17.505(a)
              *Ongoing Violations of the Texas Deceptive Trade Practices Act*

To Whom It May Concern:

      Please give this letter your complete and immediate attention.

## I.    Introduction

      I am writing on behalf of Angie Cruz, and a class of similar situated persons, to advise you that the above-referenced party ("Defendant") has violated and continue to violate the Texas Deceptive Trade Practices Act ("DTPA"). This notice is being provided according to Texas Bus. & Com. Code § 17.505(a).

## II.    Factual Background

      Defendant profits from the marketing, advertising, and distribution of the product Sensa which Defendant purports can cause weight loss. Defendant markets, distributes, and sells Sensa as a weight loss product that uses "tastants." These tastants are sprinkled onto food and the tastants "trigger your 'I feel full' signal, so you eat less and feel more satisfied." Defendant claims that Sensa will allow a consumer to "Lose **30** Pounds Without Dieting" by "Eat[ing] your favorite foods," with "no restrictive dieting," "no calorie counting," and "no sacrifice."

*Re:   Ongoing Violations of the Texas Deceptive Trade Practices Act*
November 22, 2011
Page 2

Specifically, Defendant makes the following misleading and deceptive claims on Sensa labels and in advertising; that Sensa contains:

- No stimulants;
- No food restrictions;
- No calorie counting;
- No skipping meals or fasting;
- No drastic lifestyle changes;
- No intense cravings;
- No jittery side effects;
- No dangerous "yo-yo" effect;
- No mood swings;
- [Sensa] is clinically proven; and
- [Sensa] is guaranteed.

Defendant advertises that Sensa has been clinically proven to result in an average weight loss of 30.5 pounds in just 6 months. This weight loss is "guaranteed" and requires no change in diet or exercise routine. These statements are false.

## III.   Summary of Violations

Defendant's conduct violates the Texas DTPA by, without limitation:

1.   Falsely claiming that consumers who use Sensa are guaranteed weight loss without a change in diet or exercise, when in fact the U.S. Food and Drug Administration ("FDA") instructs that the only proven way to lose weight is to either reduce the number of calories you eat or to increase the number of calories you burn off through exercise;

2.   Falsely claiming that Sensa has characteristics, uses, and benefits which it does not have;

3.   Falsely representing that Sensa is of a particular, quality, or grade;

4.   Fraudulently inducing consumers to purchase Sensa;

5.   Placing Sensa for sale to the general public when it does not materially conform to the product's advertisements;

6.   Labeling Sensa in a way that is misleading in material respects; and

7.   Creating a likelihood of confusion regarding Sensa.

*Re:  Ongoing Violations of the Texas Deceptive Trade Practices Ac.*
November 22, 2011
Page 3


## IV.   Demand for Relief

We intend to file a lawsuit seeking individual, representative, and class relief. We intend to amend the complaint in this lawsuit to add a cause of action under the DTPA unless the Defendants do the following within 60 days after receiving this notice:

1.   Agree to irrevocably stop all false and misleading advertising of Sensa products;

2.   Identifies consumers who purchased the Sensa products within the applicable limitations period and provide these consumers with appropriate refunds;

3.   Disgorges an appropriate amount of revenues from sales of Sensa products for which the purchasers cannot be identified.  This includes the diminished value of the product or the fair market value of the product; and

4.   Implements an appropriate corrective advertising campaign, inclusive of a disclaimer.

## V.   Offer of Compromise

If Defendant agrees to a stipulated injunction that includes an appropriate labeling disclaimer within 60 days from the date of this letter, we will agree to take no further action in this matter nor make any further claim for relief unrelated to the terms of the stipulated injunction.

If Defendant will not agree to this, we will amend the current complaint in the lawsuit and will seek all the requested relief available under the DTPA and other applicable law, including monetary damages, injunctive relief, statutory penalties, restitution, and attorneys' fees.  Please contact me, or have your legal counsel do so, if you would like to discuss this matter.


Very truly yours,



Aashish Y. Desai
MOWER, CARREON & DESAI, LLP

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document *via* the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct, executed on December 15, 2014, at Walnut Creek, California.

_____
Debbie Schroeder