IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02881-CMA-MJW

RAMONA JASPER, *a/k/a Nika Raet Bey*,
*on behalf of herself and all others similarly situated*,

Plaintiff,

v.

MUSCLEPHARM CORPORATION,

Defendant.

---

### REPORT & RECOMMENDATION on DEFENDANT'S MOTION TO DISMISS
### (Docket No. 25)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This is a putative class action, alleging that Defendant MusclePharm Corporation advertises its dietary supplements in such a way as to mislead consumers—in violation of federal and state law. (Docket No. 3.) Defendant has moved to dismiss under Fed. R. Civ. P. 12(b)(6), and District Judge Christine M. Arguello referred the motion to the undersigned. (Docket Nos. 25, 30.) Both parties have asked the Court to take judicial notice of various documents for purposes of resolving this motion. (Docket Nos. 20, 32.)

The Court has reviewed the parties' filings,[1] taken judicial notice of the court's file in this case, and considered the applicable Federal Rules of Civil Procedure, statutes,

---

[1] As to the motion to dismiss, Dockets No. 26, 31, and 36. As to Defendant's request for judicial notice, Docket Nos. 20, 21, 22, 23, 24, 33, and 45. As to Plaintiff's request for judicial notice, Dockets Nos. 32 and 44. Finally, one issue raised in the motion to

2

and case law. Now being fully informed, the Court makes the following findings of fact, conclusions of law, and recommendation.

## Facts as Alleged

The Complaint begins:

> This is a class action on behalf of purchasers of FitMiss Fat-Burning supplements that are purportedly designed for "all women who are striving to become a more fit and healthy FitMiss." Defendant markets the products as a method of "Rapid Weight Loss – Visible Changes in Less Than 2 Weeks" as well as a way to "reduce[] body fat," to "boost" and "promote" metabolism, "to burn [] fat," and to "turn your body into a fat burning machine." To bestow FitMiss fat burning products with an aura of legitimacy, Defendant also represents that the products contain "clinically tested ingredients." Each of these representations is false and misleading.
>
> The products are not, in fact, effective for fat burning or weight control. Indeed, as explained by the National Institutes of Health: "There are no foods that can burn fat."

(Docket No. 54, ¶¶ 1–2 (footnotes omitted).) Plaintiff further alleges that she purchased the product after reading and relying on the labeling, but "did not experience *any* weight loss or fat burning effects, and certainly did not experience 'rapid weight loss' with 'visible changes in less than 2 weeks.'" (*id.* ¶ 4.) The Amended Complaint goes on to allege social and legal environments leading to a "dramatic increase" in weight-loss advertising and in the market for dietary supplements (*id.* ¶¶ 10–12); to describe Defendant's product labels in detail (*id.* ¶¶ 13–15); and to allege that balancing caloric intake and output is "the *only* means to promote weight loss" (*id.* ¶¶ 16–17).

---

dismiss has been resolved by Plaintiff's First Amended Class Action Complaint (Docket No. 52), but the parties have stipulated that the pending motions remain relevant and may be decided as if directed to the amended complaint (Docket Nos. 53, 54, & 55).

Finally, the Complaint alleges that the specific ingredients in Defendant's product do not burn fat:

> Defendant represents on the FitMiss Burn product label and on its website that the purportedly "key ingredients" that provide a "Fat Metabolizer" effect and "All Day Energy-NO CRASH" are green tea extract and Caffeine. But the FDA has determined that "there are inadequate data to establish the general recognition of the safety and effectiveness" of caffeine for the specified use of weight control. Likewise, a 2012 Cochrane Systematic Review of 13 randomized controlled trials, of at least 12 weeks duration, concluded that green tea preparations (catechins and caffeine) had no statistically significant effect on weight loss or the maintenance of weight loss. As such, the systematic review demonstrates that Defendant's representations about FitMiss Burn are false and misleading because it *does not* cause "Rapid-Weight Loss – Visible Changes in Less Than 2 Weeks" or provide any fat loss or fat burning benefits.
>
> Defendant further represents on the FitMiss Burn product label and on its website that glucomannan (amorphophallus konjac) and raspberry ketones provide "weight management control" and "aid[] in the breakdown of fat molecules." But glucomannan is a soluble fiber that is not absorbed in the bloodstream, and does not cause any chemical response in the human body. As a result, gucomannan does not cause material loss of body fat in a person who does not reduce calories or increase exercise.
> . . .
>
> Defendant falsely claims on the FitMiss Tone product label and on its website that its "CLA Fit Blend" is a "clinically proven" "Mid-section Fat Metabolizer." Conjugated Linoleic Acid ("CLA") does not reduce body fat mass or sagittal abdominal diameter and does not cause weight loss. . . .

(*Id.* ¶¶ 21–23 (footnotes omitted).)

The Amended Complaint also makes class-action allegations not relevant at this point. (*Id.* ¶¶ 25–33). It makes four claims for relief:

(1) under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*;

(2) for breach of express warranty;

(3) for breach of implied warranty of merchantability; and

4

(4) under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTCPL"), 73 Pa. Const. Stat. §§ 201-2, *et seq.*

## Discussion

As Judge Arguello has said:

> . . . In deciding a motion under Rule 12(b)(6), the Court must accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff. However, a plaintiff may not rely on mere labels or conclusions, and a formulaic recitation of the elements of a cause of action will not do.
>
> To withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. As the Tenth Circuit explained in *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007), "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief. . . .
>
> Generally, a court considers only the contents of the complaint when ruling on a Rule 12(b)(6) motion. Exceptions to this general rule include: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes their authenticity; and matters of which a court may take judicial notice. If a plaintiff does not incorporate by reference or attach a document to its complaint, a defendant may submit an undisputably authentic copy which may be considered in ruling on a motion to dismiss.

*Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1135–36 (D. Colo. 2013) (most quotation marks, internal citations, and alterations omitted).

Here, Defendant argues: (1) that the Complaint should be dismissed based on the primary jurisdiction doctrine; (2) that the Magnuson-Moss Warranty Act does not apply to labels regulated under the Food, Drug & Cosmetic Act ("FDCA"); and (3) that

5

Plaintiff's state-law claims are insufficiently pleaded because they fail to identify which of Defendant's specific representations Plaintiff relied upon.

**I.** **Primary Jurisdiction Doctrine**

As the Tenth Circuit has explained:

> Even where a court has subject matter jurisdiction over a claim, courts have discretion to refer an issue or issues to an administrative agency. The doctrine of primary jurisdiction is specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency.
>
> The purpose of the doctrine is to allow agencies to render opinions on issues underlying and related to the cause of action. It is designed to allow an agency to pass on issues within its particular area of expertise before returning jurisdiction to the federal district court for final resolution of the case. . . .
>
> In this circuit, a district court's decision to invoke the primary jurisdiction doctrine requires it to consider whether the issues of fact in the case: (1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to the particular agency. Additionally, when the regulatory agency has actions pending before it which may influence the instant litigation, invocation of the doctrine may be appropriate. There is, however, no fixed formula . . . for applying the doctrine. Courts should consider case-by-case whether the reasons for the existence of the doctrine are present and whether the purposes it serves (*i.e.*, uniformity and resort to administrative expertise) will be aided by its application in the particular litigation.

*TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1238–39 (10th Cir. 2007) (quotation marks, internal citations, and alterations omitted).

Contrary to Defendant's assertions, the doctrine is rarely applied in cases like this one. Where dietary supplements are alleged to be misleadingly labeled, but are not alleged to violate the FDCA or the regulations thereunder, courts routinely decline to apply the primary jurisdiction doctrine. *See, e.g.*, *In re 5-hour ENERGY Mktg. & Sales*

*Practices Litig.*, 2014 WL 5311272, at *14–15 (C.D. Cal. Sept. 4, 2014) (energy-booster supplements); *Jovel v. i-Health, Inc.*, 2013 WL 5437065, at *6–8 (E.D. N.Y. Sept. 27, 2013) (brain-health supplements); *Karhu v. Vital Pharm., Inc.*, 2013 WL 4047016, at *4–5 (S.D. Fla. Aug. 9, 2013) (fat-burning supplements); *Velasco v. SEI Pharm., Inc.*, 2013 WL 2444646, at *3–4 (S.D. Cal. June 5, 2013) (energy-booster supplements); *Rikos v. Procter & Gamble Co.*, 782 F. Supp. 2d 522, 529 (S.D. Ohio 2011) (digestive-health supplements). These courts uniformly reason that the primary jurisdiction doctrine did not apply because (1) there was no need to construe a novel or complex legal question regarding the FDCA or the FDA's implementing regulations; (2) the factual question of whether the labeling would misleading to the reasonable consumer was not outside the normal expertise of judges and did not require agency expertise to answer; and (3) there was no showing of ongoing FDA proceedings with which the judicial proceedings might conflict. The Court finds this reasoning persuasive and adopts the conclusions of these cases.

Defendant makes a number of arguments to distinguish these cases, but each falls short of the mark. Specifically, Defendant argues that *In re 5-Hour ENERGY* did not involve complex factual issues or the need to treat numerous similar products uniformly—but these argument make no sense, because the science was no less relevant there than here, and there is no reason to believe that energy-boost supplements are materially less numerous in the marketplace than fat-burning supplements. Indeed, the case for primary jurisdiction was stronger in *In re 5-Hour Energy* than it is here, because the FDA had an open investigation into the product

there. *In re 5-hour ENERGY*, 2014 WL 5311272, at *15. Defendant makes the same arguments as to *Jovel*, asserting that the science there was less conflicted and that there was no concern that uniform treatment would be needed due to multiple similar products in the marketplace. But of course there are similar brain-health supplements in the marketplace—including several that have gone to litigation. *See, e.g.*, *In re Horizon Organic Milk Plus DHA Omega–3 Mktg. and Sales Practice Litig.*, 955 F.Supp.2d 1311, 1348–51 (S.D. Fla. 2013) (discussing similar cases). Further, to assert at this point that the science on Defendant's product is too conflicted to be resolved by ordinary expert testimony is to draw inferences in Defendant's favor—which the Court cannot do on a motion to dismiss.

Nor are the cases relied upon by Defendant any more persuasive. *In re 5-hour ENERGY*, *Jovel*, *Karhu*, *Velasco*, and *Rikos* are all directly apposite: they involve dietary supplements alleged to have misleading labels but not alleged to violate the FDCA and its regulations. By contrast, the four cases Defendant relies most heavily upon do not fit that fact pattern. Defendant cites *Watkins v. Vital Pharmaceuticals, Inc.*, 2013 WL 5972174 (C.D. Cal. Nov. 7, 2013), but that case concerned food products subject to different labeling laws and a different regulatory regime. The same can be said about *Haggag v. Welch Foods, Inc.*, 2014 WL 1246299 (C.D. Cal. Mar. 24, 2014)— and not only was *Haggag* about food labeling, it also alleged a violation of a new statute, the prototypical grounds for an agency's primary jurisdiction. Defendant next cites *Astiana v. Hain Celestial Group, Inc.*, 905 F. Supp. 2d 1013 (N.D. Cal. 2012), but that case has no factual similarity at all: it concerns whether the word "natural" can be

8

applied to cosmetics containing primarily synthetic materials.  Finally, Defendant provides a copy of an unpublished order in *Deary v. Vital Pharmaceuticals, Inc.*, Case No. 12-cv-04314 (C.D. Cal. Nov. 14, 2012), but this case is least apposite of all.  It concerned allegations not that a dietary supplement was simply misleading, but that it contained an undisclosed regulated drug.  (Docket No. 20-7, p.2.)  None of these cases are nearly as apposite to this one as *In re 5-hour ENERGY*, *Jovel*, *Karhu*, *Velasco*, and *Rikos*.

Ultimately, Defendant inadvertently concedes the key point in its reply brief, stating:

> Given the actual marketing statements regarding weight loss and fat loss promotion – and not Plaintiff's distortions that the product itself "burns fat" which is not claimed by MPC – Plaintiff's response reveals the true basis of the complaint: a claim that the FitMiss product "cannot work for anyone."

(Docket No. 46, p.3.)  Here, Defendant identifies the core issue: whether Plaintiff "distorts" the labeling by saying it promises that the product *itself* burns fat, a result Defendant takes pains to note "is not claimed by [Defendant]."  Thus, the question isn't whether the product itself burns fat (which Defendant apparently concedes it doesn't do), but whether the product labeling would lead the reasonable consumer to think that it does.  This is not a question of arcane scientific expertise properly deferred to the FDA; it is a routine question of tort law.

Accordingly, the Court recommends that Defendant's motion to dismiss on this theory be denied.

**II.     Magnuson-Moss Warranty Act**

Defendant next argues that Plaintiff's claims under the Magnuson-Moss Warranty Act must be dismissed because that Act does not apply to warranties otherwise governed by Federal law.[2]  Specifically, the Act provides:

> (d) Other Federal warranty laws
>
> This chapter (other than section 2302(c) of this title) shall be inapplicable to any written warranty the making or content of which is otherwise governed by Federal law.  If only a portion of a written warranty is so governed by Federal law, the remaining portion shall be subject to this chapter.

15 U.S.C. § 2311(d).  On its face, by the plain language of the statute, this provision would seem to bar Plaintiff's claim.

There are exceedingly few cases construing § 2311(d): the Court has found one state case and five federal cases.  Each one of them arises in the context of the FDCA—and each one holds that the Magnuson-Moss Warranty Act does not apply to the labels of products governed by the FDCA.  *Clancy v. The Bromley Tea Co.*, 2013 WL 4081632, at *11 (N.D. Cal. Aug. 9, 2013); *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 897 (C.D. Cal. 2013); *Bates v. General Nutrition Centers, Inc.*, 897 F. Supp. 2d 1000, 1002 (C.D. Cal. 2012); *Stewart v. Smart Balance, Inc.*, 2012 WL 4168584, at *14 (D. N.J. June 26, 2012); *Hairston v. South Beach Beverage Co.,* 2012 WL 1893818, *5 (C.D. Cal. May 18, 2012); *Kanter v. Warner–Lambert Co.,* 99 Cal. App.

---

[2] In its reply brief, Defendant makes a second argument, citing *Simmons v. Taylor Childre Chevrolet-Pontiac, Inc.*, 629 F. Supp. 1030, 1032 (M.D. Ga. 1986), and arguing that the statements at issue do not constitute warranties as defined in the Magnuson-Moss Warranty Act.  Because this argument was raised for the first time in the reply brief, the Court will not address it.

10

4th 780, 797 (2002). The analysis in each instance is relatively brief. Each of the federal cases relies on *Hairston*, which in turn relies on the state case, *Kanter*; both *Hairston* and *Kanter* are themselves quite brief on this question. But all of them come to the same conclusion: the label of the product at issue is "governed" under the FDCA, and therefore the Magnuson-Moss Warranty Act is "inapplicable."

Plaintiff makes four arguments to avoid this result. The first is to contend that *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155 (C.D. Cal. 2012), stands for the opposite conclusion. *Forcellati* did persuasively dismantle part of the *Kanter* case's reasoning. In *Kanter*, the court reasoned that the Magnuson-Moss Warranty Act and the FDCA had to be read together, and as a result a product not labeled a "consumer product" under the FDCA had to be treated as not a "consumer product" for purposes of the Magnuson-Moss Warranty Act as well. *Kanter,* 99 Cal. App. 4th at 797–98. This same argument was raised in *Forcellati*, and the *Forcellati* court explained in detail why the two statutes were not *in pari materia* and should not have been construed together in *Kanter*. *Forcellati*, 876 F. Supp. 2d at 1163–66. But the *Kanter* court's *in pari materia* analysis was its second, alternative reason for dismissing the Magnuson-Moss Warranty Act claim before it; the court's primary reason for its conclusion was the § 2311(d) rationale, and that theory is not discussed in *Forcellati* at all. Thus, *Forcellati* is no help to Plaintiff in this case.

Plaintiff also argues that *Bates*, the case Defendant relies on for its § 2311(d) theory, is distinguishable because it concerned product classification (*i.e.*, whether it is a food, a drug, or a dietary supplement) rather than misleading claims about the product's

11

attributes or effects. But it is not obvious why this distinction should make a difference under § 2311(d), which exempts "any written warranty" that is "otherwise governed by Federal law"—regardless of why or in what manner it is "otherwise governed." Further, other cases applying § 2311(d) do so in the context, like this one, of claims about a product's health effects. *See, e.g.*, *Clancy*, 2013 WL 4081632, at *1 ("The packaging labels included nutrient content, and health claims, including the phrase 'natural source of antioxidants.' The website makes such claims as 'Antioxidants in Green and Black Tea is brimming with Antioxidants, the disease-fighting compounds that help your body stave off illness' and 'Green Tea Extract May Lower Blood Pressure.'").

Next, Plaintiff argues that the provision does not apply because, unlike food or beverages, the labels on dietary supplements are subject only to after-the-fact enforcement by the FDA, rather than pre-market review. This is Plaintiff's most persuasive argument, but nonetheless the Court concludes that it falls short. The product label remains "governed by Federal law," even if that law calls for agency enforcement after the fact.

Finally, Plaintiff argues that, under the second sentence of § 2311(d), *some* of the labeling at issue remains subject to the Magnuson-Moss Warranty Act. Plaintiff made no effort to identify which portions of the objected-to labels are not governed by Federal law, however, and the Court cannot make Plaintiff's argument for her.

Accordingly, the Court recommends that the Plaintiff's Magnuson-Moss Warranty Act claim be dismissed, for failing to state a claim upon which relief can be granted.

12

## III. State-Law Claims

As to Plaintiff's state-law claims, the parties agree that Pennsylvania law applies.

Defendant makes the following argument as to Plaintiff's common-law warranty claims:

> The pleading of paragraph 4 of the complaint begs the question of what Plaintiff actually relied upon, if anything. The complaint alleges that Plaintiff made her purchase "after reading representations on the label." The complaint then goes on to identify some statements on the label, but does not state that Plaintiff read those. Then the complaint proceeds to allege that Plaintiff's decision to purchase was influenced by "the representations."

(Docket No. 25, p.23.) The Court does not agree that this purported defect is fatal to Plaintiff's claim. The paragraph at issue states that Plaintiff read and relied on statements on the product's label, and provides specific examples of the statements she read (Docket No. 52, ¶ 4); elsewhere in the complaint, the objected-to statements are set forth with great specificity (*see, e.g.*, *id.* ¶¶ 13–15, 44). Defendant's argument–that the complaint must further allege that Plaintiff specifically relied upon each distinct statement—elevates form over substance. The complaint contains a short and plain statement of the claim, and plausibly alleges facts establishing each element of the warranty claims.

Defendant further argues that the complaint fails to allege that the products do not work for the average consumer and, therefore, fails to state a warranty claim. This argument is borderline frivolous, as the complaint plainly alleges exactly that. (*See, e.g.*, *id.* ¶¶ 16–24.)

Finally, Defendant briefly argues that Plaintiff's claims under state statute fail "for the same reasons as Plaintiff's failure to plead breach of express warranty." (Docket

No. 25, p.25.) Because the Court has rejected those arguments as to express warranty, it follows that the arguments fail as to the state statute as well.

### IV. Judicial Notice

As noted above, both parties asked the Court to take judicial notice of certain documents. (Docket Nos. 20 & 32.) The Court has reviewed those documents and found none of them relevant to the discussion above.

### V. FitMiss Tone

In Defendant's reply, it argues that the allegations regarding FitMiss Tone—as opposed to FitMiss Burn—have "no place in this complaint." (Docket No. 46, p.10–12.) Nowhere in Defendant's motion to dismiss did Defendant ask for these allegations to be stricken or for the claims against it to be limited to the FitMiss Tone product. Defendant did note, in the motion to dismiss, that the allegations about FitMiss Tone "create[] ambiguity" and that the Court should consider only the statements on the FitMiss Burn product label in considering the motion to dismiss. (Docket No. 25, p.4.) But Defendant requested no relief based on this theory; the argument was made for the first time in Defendant's reply brief, and will not be considered by the Court.

### Recommendation

For the foregoing reasons, the undersigned RECOMMENDS that Defendants' Motion to Dismiss (Docket No. 25) be GRANTED IN PART and DENIED IN PART. Specifically, the Court recommends that Plaintiff's first claim for relief under the Magnuson-Moss Warranty Act be dismissed under Rule 12(b)(6), but that the motion be denied in all other respects.

14

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated: April 9, 2015
      Denver, Colorado

*/s/ Michael J. Watanabe*
Michael J. Watanabe
United States Magistrate Judge